565 A.2d 757

Bernard J. GOODHEART, et al.

v.

The Honorable Robert P. CASEY, in his capacity as Governor of the Commonwealth of Pennsylvania, The General Assembly of the Commonwealth of Pennsylvania, The State Employees' Retirement Board, and G. Davis Greene, Jr., in his capacity as Treasurer of the Commonwealth of Pennsylvania.

Appeal of The STATE EMPLOYEES' RETIREMENT BOARD.

Francis J. CATANIA, et al.

v.

COMMONWEALTH of Pennsylvania, STATE EMPLOYEES' RETIREMENT BOARD and Robert L. Cusma, in his capacity as Secretary of the State Employees' Retirement System and R. Budd Dwyer, in his capacity as Treasurer of the Commonwealth of Pennsylvania.

and

Richard B. KLEIN

v.

COMMONWEALTH of Pennsylvania, STATE EMPLOYEES' RETIREMENT BOARD.

Appeal of Richard B. KLEIN.

Supreme Court of Pennsylvania.

Reargued May 9, 1989.

Decided Oct. 23, 1989.

190

Henry T. Reath, Judith N. Renzulli, Philadelphia, for appellant.

Richard B. Klein, pro se.

LeRoy S. Zimmerman, Atty. Gen., Susan J. Forney, John G. Knorr, III, Sr. Deputy Attys. Gen., Andrew S. Gordon, Chief Deputy Atty. Gen., for appellee.

Before NIX, C.J., and FLAHERTY and McDERMOTT, JJ.

## OPINION OF THE COURT

NIX, Chief Justice.

On March 3, 1989, this Court handed down opinions announcing the judgment of the Court in the above captioned appeals granting the relief requested by the appellants therein [1] with one Justice dissenting in both matters.[2]

---

**1.** The core of the controversy in both appeals was the validity of a statutory provision, 71 Pa.C.S. § 5101, et seq., (cited as the State Employees Retirement Code of 1974), eliminating certain options for retirement contribution and increasing contribution rates for judges entering service after the March 1, 1974, date.

In *Goodheart, et al. v. Casey, et al.,* 521 Pa. 316, 555 A.2d 1210 (1989), the appellant is the State Employees' Retirement Board ("SERB") and appellees are Judge Goodheart and five other active judges of the courts of common pleas of Pennsylvania. In that appeal, the Pennsylvania Economy League and the Commonwealth Foundation filed amicus curiae briefs in support of appellants. The Pennsylvania Trial Lawyers Association and the Philadelphia Bar

---

**2.** See note on page 191.

This writer, joined by Justices Flaherty and Stout,[3] premised their result upon a breach of the constitutionally mandated requirement for adequate compensation to be paid to judges. *Goodheart v. Casey, et al.*, 521 Pa. 316, 555 A.2d 1210 (1989). Mr. Justices Larsen, Zappala and Papadakos concurred in the result in *Goodheart.* In the second appeal, Mr. Justice Larsen authored an opinion joined by Mr. Justices Zappala and Papadakos premising the grant of relief upon a finding of a violation of the equal protection provisions of the Pennsylvania Constitution. *Klein v. Employees Retirement System*, 521 Pa. 330, 344–349, 555 A.2d 1216, 1223–26 (1989). In that appeal, this writer, joined by Justices Flaherty and Stout, filed a concurring opinion rejecting the equal protection theory as a valid basis for the grant of the requested relief and reaffirming the grounds relied upon in *Goodheart.* *Klein, et al. v. Employees' Retirement System, supra*, 521 Pa. at 348–349, 555 A.2d at 1226–27 (1989).

The instant opinion is written to address the issues that have been raised in the applications for reconsideration filed herein. This Court, after receiving the applications entered an order on May 9, 1989, granting them, in part, by directing the parties to brief the specific issues set forth in the applications for reconsideration. The Court denied the request for oral argument. After consideration of the briefs, for the reasons herein stated, we reaffirm our prior judgment entered in these matters.

Association filed briefs as amicus curiae supporting the appellees position. In *Klein v. Employees' Retirement System*, 521 Pa. 330, 555 A.2d 1216 (1989), the appellant is Judge Richard B. Klein and appellees are the Commonwealth of Pennsylvania and the State Employees' Retirement System ("SERB").

In this opinion reached after reargument of both *Goodheart* and *Klein*, the applicants for reargument, together with supporting amici, shall be referred to as "SERB". The parties adverse to the reargument, as well as their supporting amici, shall be identified as "The Judges."

2. Mr. Justice McDermott noted a dissent in both appeals.

3. Madame Justice Stout retired from the bench of this Court on March 6, 1989; thus, she did not participate in the consideration of the instant petitions for reconsideration.

192

As stated, the six Justices in the judgment entered were not in agreement on the theory supporting the result reached. The opinion announcing the judgment of the Court in *Klein* relied in part upon an equal protection theory concluding that the scheme creating a two-tiered class of judges based solely upon the date of entry into the system was arbitrary and unreasonable and thus offensive to the protection sought to be afforded under Article 1, § 1, Article 1, § 26 and Article 3, § 32 of the Pennsylvania Constitution.[4] *Klein, et al. v. Employees' Retirement System, supra.* The concurring Justices expressly agreed that the appellants therein were entitled to receive the same compensation as their colleagues serving on the same bench with them, notwithstanding their rejection of the equal protection argument. The arguments now being raised challenging the equal protection analysis merely rehash the disagreement fully considered by the Court prior to reaching its decision; and, thus, do not provide a persuasive basis for altering the judgment that has been entered.

█ The attack upon the rationale employed in the opinion announcing the judgment of the Court in *Goodheart*, in essence, challenges the implicit acceptance in that opinion that retirement benefits were a part of judicial compensation. The attempt to extract from Article 5, § 16(b), a distinction between salary and retirement compensation, cannot obscure the obvious fact that public retirement benefits are part of compensation for present services. Whether the compensation is received during the judge's years of actual service or during his retirement, Pennsylvania's case law is clear that all of the compensation is for present services. *Catania v. Commonwealth, State Employees' Retirement Board*, 498 Pa. 684, 690, 450 A.2d 1342, 1345

---

**4.** The opinion announcing the judgment of the Court also presented a theory that the constitutional requirement of a unified judicial system prohibits the legislators from erecting a two-tiered retirement compensation system applicable to judges. The essence of the theory is that a two-tiered compensation system is destructive of a unified judicial system in that it is potentially devisive of harmony in the system, erodes public confidence in the independence and integrity of the judiciary and is not a unified operation of the various courts.

(1982); *McKenna v. SERB*, 495 Pa. 324, 333–34, 433 A.2d 871, 876 (1981).

> *We have said, and now reaffirm, that a public employe has a contract right to continued membership in a retirement fund, under the same rules and regulations prevailing at the time of his employment, which may not be qualified or altered by subsequent legislative enactment, Baker v. Retirement Board of Allegheny Co., 374 Pa. 165, 169, 97 A.2d 231 (1953).*
>
> The reason for this pension rule in Pennsylvania is that a public employe's compensation includes pension credits as well as salary. Accordingly, one who has rendered service for this agreed compensation has earned both his salary and his pension rights.
>
> *Wright v. Retirement Board of Allegheny County*, 390 Pa. 75, 79, 134 A.2d 231, 233 (1957) (footnotes omitted).

In framing this argument, SERB has been reluctant to admit that it is contending retirement benefits constitute a gratuity in contrast to earned deferred compensation. To rely upon the separate salary references in section 16(a) and section 16(b) to support a thesis that retirement benefits have been transformed into a gratuity separate and apart from the compensation package of the active judge, is at best, disingenuous. To ascribe to the drafters of the 1968 amendment to the judiciary article the intent to change a firmly established principle in our law in such a cryptic and obscure fashion is totally unwarranted. We, therefore, dismiss this challenge as being devoid of merit.

We also dismiss in summary fashion the applicability of the "popular sovereignty" arguments in the instant matters. Here SERB focuses upon section 16(b) and argues that by the adoption of section 16(b) "the people" intended for the legislature to have flexibility in regard to retirement benefits for judges and that the Court may not "straight jacket" the legislature by precluding prospective reduction of retirement benefits.

The proponents of this argument attempt to blur the distinction between a constitutional declaration of right

vested in the citizen and a delineation of powers conferred upon the various branches of government. The essence of their specious argument is that only the legislature could determine the dimensions and manner of exercise of a right given it by the people. Clearly this is not in accordance with our constitutional structure. It is the sole function of the judiciary to interpret the constitutional mandate, including the intended use of powers conferred upon the legislature. *Stander v. Kelley*, 433 Pa. 406, 250 A.2d 474, *appeal dismissed, sub. nom, Lindsay v. Kelley*, 395 U.S. 827, 89 S.Ct. 2130, 23 L.Ed.2d 738 (1969); *Beauty Hall, Inc. v. State Board of Cosmetology*, 418 Pa. 225, 210 A.2d 495 (1965); *Bargain City U.S.A., Inc. v. Dilworth*, 407 Pa. 129, 179 A.2d 439 (1962); *Costello v. Rice*, 397 Pa. 198, 153 A.2d 888 (1959); *In Re Marshall*, 363 Pa. 326, 69 A.2d 619 (1949); *Willcox v. Penn Mutual Life Insurance Co.*, 357 Pa. 581, 55 A.2d 521 (1947); *Commonwealth v. Zasloff*, 338 Pa. 457, 13 A.2d 67 (1940); *See also* 174 A.L.R. 220; 128 A.L.R. 1120. The issue raised in this case was not whether the legislature had the power to set judicial compensation; undoubtedly they do possess that power. Pa. Const. art V, § 16(a); *See, e.g., In Re Marshall, supra*. The question is whether the legislature can perform that function in a manner inconsistent with constitutional mandate. It is equally clear that they cannot. *Pittsburgh Railways Co. v. Port of Allegheny County*, 415 Pa. 177, 202 A.2d 816 (1964); *Miller v. City of Beaver Falls*, 368 Pa. 189, 82 A.2d 34 (1951).

The "popular sovereignty" argument, which supported our finding in *Gondelman v. Commonwealth, supra*, is totally inapplicable to the issues presented in the instant appeals. In *Gondelman*, we were concerned with allegations of an alleged conflict between two provisions of the Pennsylvania Constitution. In that context, it was appropriate to center our analysis on the inherent power of the people to structure their government as they see fit. In contrast, we are here called upon to scrutinize the constitutionality of a legislative enactment. The instant appeals

being reargued involve situations where there is a challenge to the constitutionality of a legislative act. This act would deprive judges who commence their judicial service, after March 1, 1974, from having the same retirement benefits as other members of the same court. In *Gondelman,* we stated that the Constitution of this Commonwealth places no restraints on the power of the people, "but rather upon the government in the discharging of its functions under the direction of that Constitution." *Gondelman v. Commonwealth,* 520 Pa. 451 at 469, 554 A.2d 896 at 905 (1989). Simply put, *Gondelman* concerned a constitutional provision that had been adopted by the people of this Commonwealth; the appeals here involve a statute (the State Employees Retirement Code) adopted by the legislative branch of government, not the people. Clearly then, the question presently before the Court falls within the latter category.

The serious challenge raised herein, which occasioned the grant of the petitions for reargument, is that two members of this Court improperly participated in the decision in these appeals. It is asserted that the Justices in question, being members of the class involved in the litigation, possess a *direct personal, substantial, pecuniary interest* in its outcome and that their participation violates both the Due Process Clause of the United States Constitution and the Code of Judicial Conduct.

 ▉ In analyzing the federal due process claim raised herein, we begin by noting "that not '[a]ll questions of judicial qualification ... involve constitutional validity.'" *Aetna Life Insurance Co. v. Lavoie,* 475 U.S. 813, 820, 106 S.Ct. 1580, 1584, 89 L.Ed.2d 823 (1986); *Tumey v. Ohio,* 273 U.S. 510, 523, 47 S.Ct. 437, 441, 71 L.Ed. 749 (1927). As a general rule, matters relating to judicial disqualification would not rise to a federal constitutional level. *Aetna Life Insurance Co. v. Lavoie, supra.* However, in *Aetna,* the Court reaffirmed its earlier holding in *In re Murchison,* 349 U.S. 133, 136, 75 S.Ct. 623, 625, 99 L.Ed. 942 (1955); *Tumey v. Ohio, supra,* to the effect that the Fourteenth Amendment Due Process provision is offended where a jurist

participates in a matter where he has a *direct, personal, substantial, pecuniary* interest. The Court also re-affirmed Justice Black's concession in *In Re Murchison*, 349 U.S. 133, 75 S.Ct. 623, 99 L.Ed. 942 (1955), that the degree or type of interest sufficient to disqualify a judge from sitting "cannot be defined with precision", *Aetna* 475 U.S. at 822, 106 S.Ct. at 1585, and adopted as a reasonable formulation of the issue, *Id.*,

> "whether the situation is one 'which would offer a possible temptation to the average ... judge to ... lead him not to hold the balance nice, clear and true.'" *Ward v. Village of Monroeville*, 409 U.S., [57] at 60, 34 L.Ed.2d 267, 93 S.Ct. 80, [83] 61 Ohio Ops 2d 292.

> *Id.* 475 U.S. at 822, 106 S.Ct. at 1585.

The *Aetna* court, after applying the standard of holding the balance "nice, clear and true," further refined this concept by noting,

> The Due Process Clause 'may sometimes bar trial by judges who have no actual bias and who would do their very best to weigh the scales of justice equally between contending parties'. (Citation omitted.)

> *Id.* at 825, 106 S.Ct. at 1587.

It is therefore clear that an "evil motive" is not a prerequisite to a determination of whether a litigant's due process rights are implicated. The integrity of the tribunal in meeting its obligation to perform "its high function in the best way, ... must satisfy the appearance of justice." *Id.* at 825, 106 S.Ct. at 1587, *citing In re Murchison, supra* 349 U.S. at 136, 75 S.Ct. at 625. One therefore can become an "interested" judge in this due process context where the judge is conscientiously attempting to perform his judicial duties in accordance with the highest traditions established for that esteemed office. Thus the key is not in determining whether there is "the slightest pecuniary interest", 475 U.S. at 825, fn. 3, 106 S.Ct. at 1587 fn. 3, but rather an objective standard as to whether the "interest" would lead the average judge proceeding in accordance with the *accept-*

*ed traditions of the judiciary* "not to hold the balance nice, clear and true." *Aetna* at 825, 106 S.Ct. at 1587.

■ Even if we accept, for purposes of our due process analysis, that the instant justices were "interested" judges and thus subject to disqualification in this matter, the question remains as to the appropriate remedy for such a violation. The United States Supreme Court in *Aetna* wrestled with the question of whether a decision by a multimember tribunal must be vacated because of the participation of an "interested" member. That Court recognized the judgment need not be disturbed where the participating "interested" judges' votes were mere surplusage. The persuading factor in *Aetna* in the decision to vacate the judgment of a nine-member court was that the judge in question played a "leading role" in the decision reached. He authored the opinion and cast a decisive vote in a five-to-four decision.

In the instant case the "interested" justices did not provide decisive votes for the result, nor did either of them author the Court's opinions in this matter. In both of these decisions, the vote was six-to-one in favor of the position of "The Judges". Thus, without the vote of the "interested" justices, the same result would have obtained. Neither of these cases were decisional in that no view espoused obtained a majority of the Court. Unlike the factual setting in *Aetna,* no new principle of law was established and the opinions filed merely announced the judgment of the Court. Moreover, the only opinion joined in by the two "interested" justices was not a new theory that changed the law in this Commonwealth; rather it was an application of the well established equal protection analysis.[5] It is therefore appropriate to view the participation of the "interested" justices in this instance as "mere surplusage" and, therefore, the vacating of the judgment rendered would be entirely inappropriate in this context. This decision is further bol-

5. It is also to be noted that the "interested" justices merely concurred in the result in *Goodheart,* therefore not embracing the theory espoused in the plurality opinion in that case.

stered by the fact that the "interested" justices voluntarily declined to participate in this reconsideration of the judgment, thereby eradicating any possible taint that their original participation may have provided.[6]

■ Having rejected the argument that the due process claim requires the vacation of the judgment previously entered, we now turn to the asserted violation of the Code of Judicial Conduct. Specifically, Canon 3(C) which addresses the issue of disqualification provides: "(1) a judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned, . . ."; (d)(iii) where he has "an interest that could be substantially affected by the outcome of the proceeding; . . . ." Even if there was a clear violation of this provision, it would not support SERB's position that the judgment must be vacated. Canon 3(C) does not confer substantive rights upon the parties to the litigation in question. *Reilly by Reilly v. Southeastern Pennsylvania Transportation Authority,* 507 Pa. 204, 489 A.2d 1291 (1985); *Estate of Pedrick,* 505 Pa. 530, 482 A.2d 215 (1984). The Code of Judicial Conduct, of which Canon 3 is a part, provides standards of conduct "to be referred to by a judge in his self-assessment" of his conduct as a jurist. *Reilly by Reilly v. Southeastern Pennsylvania Transportation Authority, supra* 507 Pa. at 219, 489 A.2d at 1298. If the norm of conduct set for judges is violated, that is a matter for this Court to address under the powers vested in it pursuant to Article 5, section 18 of the Constitution of this Commonwealth.

Under our substantive law a party to an action has the right to request the recusal of a jurist where that party has a reason to question the impartiality of the jurist in the cause before the court. *See generally, Berger v. United States,* 255 U.S. 22, 41 S.Ct. 230, 65 L.Ed. 481 (1921); *Reilly by Reilly v. SEPTA, supra; Commonwealth v. Darush,*

---

6. SERB concedes that, if the Court would grant reconsideration, which was done, and the "interested" Justices not participate in that reconsideration, the complaint would evaporate and they would have received that which they are seeking. The justices in question on their own motion did not participate in this reconsideration.

501 Pa. 15, 459 A.2d 727 (1983); *Commonwealth v. Perry,* 468 Pa. 515, 364 A.2d 312 (1976); *In re Crawford's Estate,* 307 Pa. 102, 160 A. 585 (1932). In this instance SERB relied upon the fact that the two Justices would fall within the class that would be benefited under the claim that was being asserted by "The Judges" in *Goodheart.*[7] The fact that these Justices would fall within the group of judges who took office after March 1, 1974, was a matter of public record and known by SERB prior to the time of argument in these cases. At no point prior to the petition for reargument did SERB raise the question and/or request the disqualification of the Justices in question. "The Judges" in their Answer in Opposition to Application for Reargument referred to this conduct on the part of SERB as:

> [A]ppellant chose to remain silent, resorting to the unconscionable and reprehensible tactic of laying in the grass, waiting until the decision and then raising the disqualification issue only if they lost.

We cannot say that this characterization, although somewhat florid, is either inaccurate or unfair. The case law in this Commonwealth is clear and of long standing; it requires a party seeking recusal or disqualification to raise the objection at the earliest possible moment, or that party will suffer the consequence of being time barred. *Reilly, supra.* Under our law, a strong tradition has been established which recognizes that each judge has the primary responsibility for determining the validity of a challenge to his or her participation in a given matter. *Commonwealth v. Hammer,* 508 Pa. 88, 494 A.2d 1054 (1985); *see also, Commonwealth v. Cherpes,* 360 Pa.Super. 246, 520 A.2d 439, *appeal denied,* 515 Pa. 612, 530 A.2d 866 (1987);

---

**7.** It is to be noted that the appeal of Judge Klein also involves an issue peculiar to him alone. Those issues arose from

a) the interruption and resumption of his service, and

b) SERB's position that he lost his rights when his employment contract terminated on January 6, 1974.

That is to say, Klein's appeal raised the issue of whether continuous service was a condition precedent to the preservation of benefits for judges. That issue was not in the *Goodheart* case, nor was our resolution of this issue questioned by SERB on reargument.

*Crawford's Estate, supra;* Code of Judicial Conduct, Canon 3C.

This view rests upon the sound premise that the jurist requested to recuse himself is the most capable to determine those factors hidden in the recesses of the mind and soul which would bear upon his or her capability to maintain the impartiality that each matter must receive. That exercise of conscience was intended to be aided by Canon 3(C) which provides some of the factors bearing upon such an evaluation. The decision of that judge is final, subject to review only for an abuse of that discretion. *Crawford's Estate,* 307 Pa. at 108–109, 160 A. at 587 (1932); *Wallace v. Jameson,* 179 Pa. 98, 36 A. 142 (1897). Where the asserted impediment is known to the party, and that party fails to promptly direct the attention of the jurist to that fact, the objection is waived and the party may not subsequently offer the objection as a basis for invalidating the judgment. *Reilly* 507 Pa. at 222, 489 A.2d at 1300. *See generally, Zeman v. Borough of Canonsburg,* 423 Pa. 450, 223 A.2d 728 (1966); *Bourd v. Berman,* 359 Pa. 183, 58 A.2d 442 (1948); *Parke, to Use of Thomson v. Pennsylvania Threshermen & Farmers Mutual Casualty Insurance,* 334 Pa. 417, 6 A.2d 304 (1939).

We have also long recognized that under our tradition it has been a cardinal rule that "the law will not suppose a possibility of bias or favor in a judge, who is already sworn to administer impartial justice, and whose authority greatly depends upon that presumption and idea." 3 W. Blackstone, Commentaries 361. While it is expected that conflicts may arise where the judge has the duty to disqualify himself in the appropriate case, this obligation should not be used as a guise for the judge to avoid difficult or unpleasant decisions. *See, e.g., Smith v. Danyo,* 441 F.Supp. 171, (M.D.Pa.1977), *aff'd,* 585 F.2d 83 (3d. CA 1978). Drawing the balance, "nice, clear and true", between the obligation to dispose of the matters that come before the court and the duty to disqualify in those instances where the jurist's impartiality might be legitimately questioned is often diffi-

cult. The fact that a party has promptly raised an objection asserting a conflict may well be the factor that ultimately determines the court's decision in this regard. To permit the "cat and mouse" approach employed here defeats the purpose to be achieved in this area of disqualification.

Unlike a trial court where one judge presides, courts *en banc*, panels or *en banc* intermediate appellate courts, the Supreme Court is constituted so as to provide its full complement of seven members to consider all of the matters that come before it. Its responsibility to interpret and develop the law of this Commonwealth mandates that its full membership be available and participate in all matters that come before that Court. A state as diverse in cultures, interests and ethnic stock as this Commonwealth increases the importance of assuring that the questions before this Court receive the reflective judgment enriched by the varied perspectives of its members that participate in reaching that judgment. The expression of concurring and dissenting views assures a more complete exposition of the reasons underpining the judgment and aids in evaluating the wisdom of the majority position. Quite frequently the dissenting view today becomes the majority view of the future. Thus this Court was structured so that, except for good cause, the full complement of the Court should participate in the judgments of this Court. Failure to recuse, standing alone, is not a basis for collateral attack upon a jurist.

Where there is a question of the impartiality of one or more of the Justices, it is the individual Justice's responsibility to make a conscientious determination whether he or she can impartially assess the issues in question. It is to be emphasized that this assessment is two tiered. *First,* whether the Justice would have a *personal* bias or interest which would preclude an impartial review. This is a personal and unreviewable decision that only the jurist can make. *Second,* whether his participation in the matter would give the appearance of impropriety. "[T]o perform its high function in the best way, 'justice must satisfy the appear-

ance of justice'. *Offutt v. United States,* 348 U.S. 11, 14 [75 S.Ct. 11, 13, 99 L.Ed. 11]." *Murchison,* 349 U.S. at 136, 75 S.Ct. at 625.

There are frequently instances where the Justice is satisfied after the first assessment that he or she will be able to render an impartial judgment, but agrees to recusal because an objection has been raised. The second assessment is of lesser importance because "appearances" are not justice. When a request for recusal is made upon the record, and the alleged impediment is made public, "appearance" alone diminishes in importance and must be counterbalanced by the need for consideration by a full complement of the Court, as noted above.

When, however, the Justice, after the first assessment, determines that he or she can render an impartial judgment, that judgment on recusal will not be reviewed by any source, in any forum, as a result of belated complaints of improper participation. Where disqualification is raised before the Court and the merit of the motion obvious, the remaining Justices have the duty to request that Justice to accede to the recusal request. In the case, *sub judice,* the facts suggesting the disqualification were known or should have been known when the case was called for argument and are therefore waived. This is so because the jurist, under such circumstances, may properly assume that the lack of objection by the litigants reflects the appropriateness of his or her participation.

For the foregoing reasons, we conclude that the objections were without merit and that the prior judgments of the Court entered in these matters are affirmed.

LARSEN, ZAPPALA and PAPADAKOS, JJ., did not participate in the reconsideration and decision of these cases.

McDERMOTT, J., files a concurring and dissenting opinion.

McDERMOTT, Justice, concurring and dissenting.

After reconsideration and the careful, learned analysis of the Chief Justice for the majority, I regret I cannot agree that prospective compensation, including pension, are not the prerogative of the Legislature. However, I join the majority opinion on the issue of recusal.