573 A.2d 1001

**MARITRANS G.P., INC., Maritrans Partners L.P. and Maritrans Operating Partners L.P., Petitioners,**

v.

**PEPPER, HAMILTON & SCHEETZ and J. Anthony Messina, Jr., Respondents.**

Supreme Court of Pennsylvania.

Decided April 12, 1990.

## MEMORANDUM OPINION

NIX, Chief Justice.

Petitioners filed an Emergency Application For A Stay Or An Order Restoring The Preliminary Injunction Pending Disposition On Application For Petition For Review (In The Nature Of An Appeal) on April 5, 1990, together with an Emergency Motion for A Hearing. Respondents filed a Brief In Opposition To The Emergency Application For A Stay of the March 29, 1990, Judgment Of A Panel Of The Superior Court. A hearing was held April 9, 1990, in chambers. Petitioners unsuccessfully sought to meet the

requirements for the grant of a stay. At the close of the day, April 9, 1990, my Order denying petitioners' Application was entered.

Petitioners, Maritrans G.P., Inc., Maritrans Partners L.P. and Maritrans Operating Partners L.P. ("Maritrans") obtained a preliminary injunction against respondents, Pepper, Hamilton & Scheetz and J. Anthony Messina, Jr., Esquire ("Pepper") in the Court of Common Pleas of the First Judicial District (Philadelphia County) on April 26, 1989.

On February 2, 1988, Maritrans filed a civil suit against Pepper seeking millions of dollars in damages as well as a preliminary and permanent injunction restraining Pepper from representing certain clients of Pepper's which Maritrans calls "competitors." The request for preliminary injunction was denied. An appeal to the Superior Court from that denial was orally argued. Prior to a ruling thereon by the Superior Court but while the appeal was pending, Maritrans filed an amended complaint in the court of common pleas and then withdrew its appeal. The amended complaint added counts of Breach of the Duties Owed by an Attorney to His Client, Deceit and Constructive Fraud, and Legal Malpractice to the original counts of Misappropriation of Trade Secrets, Breach of Contract and Breach of Fiduciary Duty.

After twenty-eight trial days spanning a three-month period on Maritrans' renewed motion for a preliminary injunction, the trial court again denied the request for injunction on Friday, April 21, 1989. Five days later, however, the trial court, *sua sponte,* reversed itself and granted the request to prohibit Pepper from representing its alleged "competitor" clients in labor negotiation. The trial court issued an order, in light of the April 26, 1989, decision, dated May 1, 1989 (amended by orders dated May 15, 1989, June 19, 1989, and July 7, 1989).

Meanwhile, on May 9, 1989, Pepper appealed the grant of the preliminary injunction to the Superior Court. On March 20, 1990, a decision of a Superior Court panel reversed the order of the court of common pleas dated May 1, 1989,

which granted the preliminary injunction, and judgment was entered by the Superior Court. On March 30, 1990, the Superior Court, by Judge James Cavanaugh, stayed the effect of the panel's decision until 5:00 p.m., April 6, 1990. On April 4, 1990, a *per curiam* denial of the Application for Stay was entered by the Superior Court, Judge Donald Wieand being noted as having not participated in the denial decision. This was the procedural posture when Maritrans' Emergency Application for a Stay was heard in this Court.

Maritrans is a Philadelphia-based maritime transportation company while respondents are a law firm and a partner of that law firm. Maritrans had been a client of Pepper for more than eleven years. In the fall of 1987 Maritrans became cognizant of Pepper's representation of five New York-based marine transportation companies in, *inter alia,* negotiating labor agreements with a New York local of the International Longshoremen's Association ("ILA"). In January of 1988 two other New York-based marine transportation companies became clients of Pepper, bringing the total of New York-based transportation companies represented by Pepper to seven.

In the latter part of 1987 Maritrans objected to Pepper's representation of the New York companies in labor matters, although the New York labor negotiations were not with the union with which Maritrans had its labor contract, the Seafarers' International Union ("SIU"). Pepper attempted to reach an agreement through negotiations with Maritrans which would remove the client's objections. Peter Hearn, Esquire, a partner in the firm not involved with Pepper's representation of Maritrans, was given the task of effectuating the removal of Maritrans' objections. Pepper suggested their two attorneys (D'Angelo and Haller) designated to handle Maritrans legal matters would not convey any information received from Maritrans to Pepper's attorney (Messina) designated to represent the New York firms in the labor negotiations with a local of the ILA. This proposal, called a Chinese Wall, was not accepted and on December 1, 1987, Pepper ended its representation of Maritrans.

However, shortly before Pepper terminated its representation of Maritrans and while Maritrans was objecting, a meeting was held with Pepper lawyers, D'Angelo and Haller, and two Maritrans executives, Heyward Coleman, Executive Vice–President in Charge of Sales and Marketing, and John J. Burns, Jr., Manager of Labor Relations. The events of this November 5, 1989, meeting were disputed by the Pepper attendees and Maritrans' Mr. Coleman. The trial court found as facts that the meeting lasted thirty-five minutes; that strategies were discussed regarding Maritrans' desire to seek the marine transportation business in New York harbor if the New York firms' labor contract negotiations broke down and a strike was called; that these strategies were discussed with D'Angelo and Haller from both a legal standpoint and a sound business perspective; and that the information conveyed by Maritrans at the November 5th meeting was deemed confidential by Maritrans and was not to be conveyed to Messina. D'Angelo and Haller conceded this above ultimate fact.

After Pepper no longer represented Maritrans and a representation letter from Seymore Kurland of the law firm of Wolf, Block, Shorr and Solis–Cohen, on behalf of Maritrans, had been received by Pepper, Peter Hearn called a meeting of D'Angelo, Haller, Messina and himself. The meeting occurred in either late December 1987 or early January 1988. At that meeting Messina and Hearn were told of information given D'Angelo and Haller by Maritrans' executives in the November 5th meeting. This revealment was characterized by the trial court as "a disclosure in direct contradistinction to a specific request of an attorney not to tell [Messina] something." N.T., Wednesday, April 26, 1989, p. 37. Maritrans' allegations that Pepper disclosed confidential information to Maritrans' "competitors" were not accepted by the trial court, N.T. Wednesday, April 26, 1989, p. 37, and Maritrans does not assert here that there has been an actual disclosure of Maritrans' information to "competitors." Counsel for Mari-

trans affirmatively stated at the hearing held on the present application that *there was no actual disclosure.*

■ On an application for a stay pending appeal the movant is required to make a substantial case on the merits and to show that without the stay, irreparable injury will be suffered. Additionally, before granting a request for a stay, the court must be satisfied the issuance of the stay will not substantially harm other interested parties in the proceedings and will not adversely affect the public interest. *Pennsylvania Public Utility Commission v. Process Gas Consumers Group,* 502 Pa. 545, 552–54, 467 A.2d 805, 808–09 (1983) (adopting the standards set forth in *Virginia Petroleum Jobbers Association v. Federal Power Commission,* 259 F.2d 921 (D.C.Cir.1958), as refined by *Washington Metropolitan Area Transit Commission v. Holiday Tours, Inc.,* 559 F.2d 841 (D.C.Cir.1977), as the criteria of Pennsylvania courts for the issuance of a stay pending appeal).

We examined whether Maritrans had made a substantial case on the merits and found that it had not. In its Emergency Application For A Stay, paragraphs 37 through 45, Maritrans identified the underlying cause of action relied upon as one for Breach of Fiduciary Duty.[1]

■ Maritrans claims there is a substantive law in this Commonwealth establishing, in attorney-client relationships, civil liability for breach of a fiduciary duty to not undertake representation of a client whose interests are materially adverse to a former client in a substantially related matter; that the breach is the *undertaking* of the representation of a client whose interests are materially adverse to the former client in a substantially related matter, not actual disclosure of any confidential information; and that such a breach renders the attorney liable for damages. Maritrans cites no authority for this claim. Rather Maritrans relies

---

1. The alleged cause of action for Breach of Fiduciary Duty was one of the three causes set forth in the original complaint. Since no reference is made to the other two, as well as the three counts added by amendment, see p. 2 of this Memorandum Opinion, the five other alleged causes have been abandoned and thus will not be addressed.

on the authority of cases all of which are inapposite since the cases either involve actions for disqualification of attorneys, or do not involve attorney-client relationships. Reliance upon Section 396 of the Restatement of Agency (Second) and Comment (i) on Clause (c) of Section 396 is misplaced because 1) the trial court did not find Pepper had made a profit by the sale or use of confidential information, and 2) this Court has not adopted Section 396 of the Restatement of Agency (Second).

Maritrans urges its unsupported theory of the case in the face of the Superior Court's decision. That court held the lower court improperly used the Rules or Code of Professional Responsibility to augment the substantive law of this Commonwealth and thus establish a right to relief, citing to the Scope of the Rules of Professional Conduct, 42 Pa.C.S.; the Preliminary Statement to the Code of Professional Responsibility; *Reilly by Reilly v. Southeastern Pennsylvania Transportation Authority*, 507 Pa. 204, 489 A.2d 1291 (1985); and *In re Estate of Pedrick*, 505 Pa. 530, 482 A.2d 215 (1984) (plurality decision: two of seven justices concurring and two justices dissenting on other grounds).

In *Goodheart v. Casey*, 523 Pa. 188, 565 A.2d 757 (1989), I wrote:

Having rejected the argument that the due process claim requires the vacation of the judgment previously entered, we now turn to the asserted violation of the Code of Judicial Conduct. Specifically, Canon 3(C) which addresses the issue of disqualification provides: "(1) a judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned, ...."; (d)(iii) where he has "an interest that could be substantially affected by the outcome of the proceeding,...." Even if there was a clear violation of this provision, it would not support SERB's position that the judgment must be vacated. *Canon 3(C) does not confer substantive rights upon the parties* to the litigation in question. *Reilly by Reilly v. Southeastern Pennsylvania Transportation Authority*, 507 Pa. 204, 489 A.2d 1291 (1985); *Estate of*

*Pedrick,* 505 Pa. 530, 482 A.2d 215 (1984). The Code of Judicial Conduct, of which Canon 3 is a part, provides standards of conduct "to be referred to by a judge in his self-assessment" of his conduct as a jurist. *Reilly by Reilly v. Southeastern Pennsylvania Transportation Authority, supra* 507 Pa. at 219, 489 A.2d at 1298. If the norm of conduct set for judges is violated, that is a matter for this Court to address under the powers vested in it pursuant to Article 5, section 18 of the Constitution of this Commonwealth. (Emphasis added.)

523 Pa. at 198, 565 A.2d at 762.

The holding that the Code of Judicial Conduct does not confer substantive rights upon the parties is bottomed on the legal principles enunciated in *Reilly by Reilly v. Southeastern Pennsylvania Transportation Authority, supra.* The law is clear that the Codes and Rules of Professional Responsibility may not be used in a fashion that, according to the Superior Court, the lower court did.

Understandably then, Maritrans seeks to avoid that path. It asserts the lower court did not use the Code or Rules of Professional Responsibility to create a cause of action but rather the Code and Rules of Professional Responsibility, introduced in this case by Maritrans and relied upon by the trial court, condemn violations of common law duties which have an independent existence. See paragraphs 36 and 37 of petitioners' Emergency Application. However, Maritrans does not establish an independent cause of action encompassing the asserted duty, asserted breach and requested relief. Thus I conclude Maritrans failed to show a substantial case on the merits.

■ In view of that failure, we need not scrutinize compliance with the remaining three criteria of *Process Gas, supra.* However, it is noted the requirement of irreparable injury to Maritrans was not met independent of Rule 1.9(a) of the Rules of Professional Conduct.

In its Emergency Application at paragraph 47, Maritrans alleges:

47.  The lower court's order of May 1, 1989 has constituted the status quo for nearly one year in prohibiting the harm from a flow of information about Maritrans to the New York-based competitors whose interests are materially adverse to those of Maritrans.  The allowance of any break in the dam created by the May 1, 1989 order, pending appeal to this Court of the Judgment of the Superior Court of March 29, 1989, risks irreparable injury to Maritrans from the improper use or disclosure by Pepper and Messina—even inadvertent—of its confidential information.

The language "irreparable injury to Maritrans from the improper use or disclosure by Pepper and Messina—even inadvertent—of its confidential information" is clearly an adaptation of the trial court's finding of irreparable harm via Rule 1.9(a) of the Rules of Professional Conduct.  The trial court said, at pp. 15–16 of the N.T. dated April 26, 1989:

> Finally, and most importantly, this Court did not give full weight to the fact that Rule 1.9(a) is indeed prophylactic in nature.... Possibility of disclosure, even inadvertent, is a significant concern of 1.9(a).

At p. 20 of the N.T. dated April 26, 1989, that court stated:

> The irreparable harm to Maritrans is apparent in the confidential information presumed to be within Pepper's knowledge, and which this Court further found to be of value to competitors, which is now subject to use or disclosure, inadvertent or otherwise, of which Maritrans may have a legitimate fear.

Thus, there is no question but that the trial court used Rule 1.9(a) to meet the irreparable harm requirement.  However, the irreparable harm requirement of *Process Gas* is not met by the assertions of paragraph 47 of the Emergency Application.

While one legal commentator views a coalescence of malpractice law and disciplinary law positively because of needed deterrence, Lerman, *Lying to Clients*, 138 U.Pa.L.

Rev. 659, 748 (1990), there is a total vacuum of judicial decisions coalescing the Rules of Professional Responsibility with actions for breach of fiduciary duty and criteria required for the issuance of a stay of a court order. In *Illinois Tool Works, Inc. v. Kovac,* 43 Ill.App.3d 789, 2 Ill.Dec. 472, 357 N.E.2d 639 (1976), a manufacturer of plastic multipack carriers for packing beer, soft drinks and juice ("Tool Works") sought injunctive and other relief from an attorney (Kovac) formerly employed by it as an in-house patent attorney. Tool Works, the plaintiff, claimed a breach of the attorney-client relationship by defendant Kovac's representation of others adversely in matters that were substantially related to confidential information he had acquired while representing the Tool Works.[2] The court affirmed the lower court's dismissal of the complaint, noting the case was neither a disciplinary proceeding nor an attempt to disqualify the lawyer and finding no breach of a fiduciary or confidential relationship. That case stands for the proposition that without evidence of imminent or actual disclosure, the violation of the prophylactic rule against representation of a former client's adversary in a substantially related matter will not sustain an injunction against continued representation of the new client.[3]

Here it is emphasized the present record does not disclose either an imminent or actual disclosure to the alleged competitors. The reasoning of the Illinois Court in *Illinois Tool Works, Inc. v. Kovac, supra,* reflects our view of the matter.

Finally, it would have been most inappropriate and erroneous to begin such an unchartered course in response to an Emergency Application For A Stay of a lower appellate court's order. Therefore the stay request was denied.

---

2. The claim is remarkably similar to Maritrans' claim in this case.

3. See, Developments–Conflicts of Interest, 94 Harv.L.Rev. 1244, 1491–92 (1981).