## Thomas v. Lysaght

*Leslie B. Handler,* for plaintiff.
*Robert F. Claraval,* for defendants.

DOWLING, *J.,* April 18, 1991—Dayton Thomas received a $350,000 annuity settlement in 1984 as the result of injuries sustained in a motor vehicle accident. The annuity payment schedule was as follows:

| | |
|---|---|
| September 1, 1986 | $20,000 |
| September 1, 1988 | 20,000 |
| September 1, 1990 | 30,000 |
| September 1, 1992 | 30,000 |
| September 1, 1994 | 50,000 |
| September 1, 1999 | 100,000 |
| September 1, 2004 | 100,000 |

It is alleged in this equity complaint that he was unhappy about the annuity and wanted to obtain funds immediately. He therefore consulted Attorney Gary Lysaght who informed him that this could be done by selling the contract and that he, Gary

Lysaght, would be willing to purchase same, but was concerned as to the legal effect of a purchase by him. (Paragraph 5 of amended complaint.) Lysaght then suggested that he have his girlfriend, Deborah Krekstein (now his wife), purchase it; and an agreement was reached for her to pay plaintiff $30,000 for all rights in the annuity contract of $350,000. To further the scheme, Lysaght, acting as attorney for plaintiff, had Mr. Thomas execute a notice of request for an irrevocable direct deposit of all future payments due to him to Deborah Krekstein, a permanent and irrevocable power of attorney from plaintiff to Deborah Krekstein, an assignment and agreement of sale with regard to all sums of money due or become due, and a disclosure statement to the effect that Gary Lysaght had never been retained as an attorney by Dayton Thomas.

It is further alleged that the insurance company issued a $30,000 check which has been deposited in the joint account in the names of Dayton Thomas and Deborah Krekstein, but that plaintiff has only received $14,000 of this amount. It is further charged that during the time in which plaintiff sold the annuity, he was mentally and physically impaired by reason of alcohol and that defendants were fully aware of his condition. The complaint charges that defendant, Gary Lysaght, breached his fiduciary duty to plaintiff, who was his client, and also violated the Code of Professional Responsibility.

To these serious charges, defendants have filed preliminary objections in the nature of a motion to either strike the complaint for raising the issue of Attorney Lysaght violating the Code of Professional Responsibility and for referring to Mr. Lysaght as an attorney or, in the alternative, to delete all references in the complaint to Mr. Lysaght's professional

240

status and his purported violation of the Code of Professional Responsibility.

In *Maritrans G.P. Inc. v. Pepper, Hamilton & Sheetz,* both the Supreme and Superior Courts, 524 Pa. 415, 573 A.2d 1001 (1990), and 392 Pa. Super. 153, 572 A.2d 737 (1990), spoke to the issue of whether an attorney's violation of the Code of Professional Responsibility (now the Rules of Professional Conduct) would support a cause of action in the civil courts (in that case, an injunction) and held, in effect, that whether or not the rules were violated was not a proper consideration. In the *Maritrans* case, the ethical misconduct appears to have been the *sole* reason for the lawsuit and was based on representing clients with conflicting interests and disclosing confidential information. The Superior Court stated:

"The preliminary statement to the Code of Professional Responsibility states:

" 'The code makes no attempt to prescribe either disciplinary procedures or penalties for violation of a Disciplinary Rule, nor does it undertake to define standards for civil liability of lawyers for professional conduct.'

"Our courts have endorsed this position. In *In re Estate of Pedrick,* 505 Pa. 530, 482 A.2d 215 (1984), our Supreme Court rejected the argument that an attorney's failure to govern himself or herself by the standards set forth in the Code of Professional Responsibility, standing alone, would be sufficient to create a cause of action."

The Supreme Court, in support, quoted from an earlier decision in *Goodheart v. Casey,* which dealt with an alleged violation of the Code of Judicial Conduct:

"In *Goodheart v. Casey,* 523 Pa. 188, 565 A.2d 757 (1989), I wrote:

" 'Having rejected the argument that the due, process claim requires the vacation of the judgment previously entered, we now turn to the asserted violation of the Code of Judicial Conduct. Specifically, Canon 3(C) which addresses the issue of disqualification provides: "(1) a judge should disqualify himself in a proceeding in which his *impartiality might reasonably be questioned*. . ."; (d)(iii) where he has "an interest that could be substantially affected by the outcome of the proceeding. . . ." Even if there was a clear violation of this provision, it would not support SERB's position that the judgment must be vacated. *Canon 3(C) does not confer substantive rights upon the parties* to the litigation in question. *Reilly by Reilly v. Southeastern Pennsylvania Transportation Authority,* 507 Pa. 204, 489 A.2d 1291 (1985); *Estate of Pedrick,* 505 Pa. 530, 482 A.2d 215 (1984). The Code of Judicial Conduct, of which Canon 3 is a part, provides standards of conduct "to be referred to by a judge in his self-assessment" of his conduct as a jurist. *Reilly by Reilly v. Southeastern Pennsylvania Transportation Authority, supra,* 507 Pa. at 219, 489 A.2d at 1298. If the norm of conduct set for judges is violated, that is a matter for this court to address under the powers vested in it pursuant to Article 5, section 18 of the Constitution of this Commonwealth.' (emphasis supplied)

"The holding that the Code of Judicial Conduct does not confer substantive rights upon the parties is bottomed on the legal principles enunciated in *Reilly by Reilly v. Southeastern Pennsylvania Transportation Authority, supra.* The law is clear that the Codes and Rules of Professional Responsibility may not be used in a fashion that, according to the Superior Court, the lower court did."

In the instant case, plaintiff sets forth two bases for his cause of action—the attorney's breach of his fiduciary relationship to plaintiff (his client), and a violation of the Code of Professional Responsibility. The charges in this complaint, and, at this point they are only charges, appear to be serious lapses; and we are certainly not inclined to dismiss the action entirely. We are constrained to delete that portion of the complaint which refers to a violation of the Code of Professional Responsibility. However, we decline to place Mr. Lysaght in a non-professional status by removing his designation as a member of the bar. It would seem that the fiduciary relationship, which was allegedly broken, would arise out of his professional duties, even without any reference to the Canon of Ethics.

Accordingly, we enter the following

## ORDER

And now, April 18, 1991, defendants' preliminary objections are dismissed, with the exception of those which refer to the portions of the amended complaint which refer to a violation of the Code of Professional Responsibility, which are granted.