**Stetler v. Piecyk**

*Paul M. Pearlstein,* for plaintiff.

*Nicholas Deenis,* for defendant Archdiocese of Philadelphia.

*Suzanne Reilly,* for defendant City of Philadelphia.

*John Robert Brown,* for defendant Piecyk.

GOODHEART, *S.J.,* June 24, 2002—

## INTRODUCTION

The plaintiff timely appeals from the entry of judgment on my order of May 7, 2002, denying her motion to remove a compulsory nonsuit that I entered as to her claims against the Archdiocese of Philadelphia, St. Martha's School and St. Martha's Parish (collectively, the Archdiocesan defendants) on September 26, 2001, after the close of the plaintiff's case the previous afternoon. Defendant Joyce Piecyk, owner of the car driven by defendant Mark Piecyk, was let out of the case in December 2000, and the City of Philadelphia settled with the plaintiff shortly before trial. Because the sole remaining defendant, Mark Piecyk, conceded liability, the case went to the jury solely for a determination of damages. The jury returned a verdict of $1,793,132.30 against Mr. Piecyk, who filed no post-trial motions, and the award against him—which will probably never be paid[1]—is not at issue in this appeal.

The plaintiff's post-trial motion raised 17 allegations of error; one was withdrawn by the plaintiff, and of the

---

1. This tragic accident—which caused the minor plaintiff devastating injuries—was caused by the inexcusably reckless driving of defendant Mark Piecyk, who carried just $15,000 in insurance coverage, the scandalously inadequate minimum required by Pennsylvania law.

remaining 16, the plaintiff concedes that only two are relevant to evaluation of the motion to remove the nonsuit. Those issues will be discussed following a brief summary of the underlying facts of this case, which are not substantially in dispute.

## BACKGROUND

On February 19, 1997, the minor plaintiff, Joseph Jamison, was riding his bicycle home from St. Martha's School, on the (eastern) sidewalk of northbound Academy Road in northeast Philadelphia, just north of the school zone, and beyond the northernmost limit of the school property when he was struck and seriously injured by a car being driven by defendant Mark Piecyk. Mr. Piecyk, who acknowledged that he was speeding at the time, lost control of his vehicle after suddenly encountering a stopped bus; his car then left the highway, jumped the curb, and plowed into the minor plaintiff and two other students.

## DISCUSSION

### 1. *The Archdiocesan Defendants Owed the Minor Plaintiff No Duty*

Fundamentally, there can be no liability for negligence in the absence of a duty owed by the defendant to the plaintiff. *Althaus v. Cohen,* 562 Pa. 547, 756 A.2d 1166 (2000).

Here, the plaintiff's case against the Archdiocesan defendants was premised upon the assertion that those

defendants were obliged to have installed flashing "school zone" signs on Academy Road north and south of the school, in part because defendant Mark Piecyk testified that he "would have" slowed down for the school zone had there been flashing lights directing him to do so, both because he obeys such signs where present, and because other cars would have slowed down, forcing him to do so as well. (N.T. 9/21/2001, pp. 100-103.) Mr. Piecyk was familiar with the area, having attended Archbishop Ryan High School, which is located immediately adjacent to St. Martha's, and he admitted that he knew that he was in a school zone at the time of the accident, that he had seen the posted school zone signs, and that he had nonetheless sped through the area on his way home after stopping at Archbishop Ryan to pick up his girlfriend, who had apparently taken another way home.

The simple truth is that there is no duty, statutory or otherwise, that required the Archdiocesan defendants to install flashing "school zone" signs north and south of St. Martha's School, and there can thus be no liability imposed upon those defendants for failing to do so.

This is consistent with the holding of the Montgomery County Court of Common Pleas, in *Watson v. PennDOT,* no. 87-07298, 1996 WL 942124 (1996);[2] 33 D.&C.4th 325 (1996), to the effect that a private school has no duty to provide a safe means of crossing a public street, at least in the case where classes have ended for the day, the child is beyond the school's property and on

---

2. The appeal from this order was quashed as being interlocutory; because the matter subsequently settled, no appellate court opinion ever addressed the merits of the case.

his or her way home, and is not en route to a school-sponsored activity.

Though the applicability of the Sovereign Immunity Act, 42 Pa.C.S. §8521 et seq., and the Political Subdivisions Tort Claims Act, 42 Pa.C.S. §8541 et seq. complicates matters somewhat, the holding in *Stein v. PennDOT,* 144 Pa. Commw. 105, 601 A.2d 384 (1991), is also instructive; there, the plaintiff, a teenager, was struck by a car while crossing U.S. Route 19, in Upper St. Clair Township, Allegheny County, en route to classes at Upper St. Clair High School, which was located directly across the highway from the point at which the plaintiff had attempted to cross. She, through her parents, sued PennDOT, the Upper St. Clair School District and the Township of Upper St. Clair, for negligence.

After disposing of the governmental and sovereign immunity questions, the Commonwealth Court, sitting en banc, found that the fact that the plaintiff was a student in the Upper St. Clair School District did not create a higher duty on the part of the district to protect her from harm while on her way to school.

It is also clear that the Archdiocesan defendants could not have erected flashing school zone signs on their own; 75 Pa.C.S. §6125 provides that "[n]o person shall place, maintain or display upon or in view of any highway any unauthorized sign, signal, marking or device which purports to be or is an imitation of or resembles an official traffic-control device, or which attempts to direct the movement of traffic . . . ." The corresponding section of the Pennsylvania Code, 67 Pa. Code §201.32, provides that *local authorities* are responsible for erecting offi-

cial traffic-control devices for school zone speed limits on highways." (emphasis added)

Finally, the plaintiff's contention that the Archdiocesan defendants breached a duty that they had assumed, pursuant to Restatement (Second) of Torts §323 (1995), by applying for, but failing to secure the installation of, flashing school zone lights also lacks a basis in law.

Restatement (Second) of Torts §323 reads, in pertinent part, as follows:

"One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if

"(a) his failure to exercise such care increases the risk of such harm, or

"(b) the harm is suffered because of the other's reliance upon the undertaking."

Section 323 does not apply to this case because the Archdiocesan defendants rendered no "service" to the plaintiff within the meaning of the section by the mere act of applying for the installation of flashing school zone lights, and were thus under no duty to exercise reasonable care in connection with doing so.

Moreover—even if the act of making application for the flashing signs can be construed as the rendering of a service by the Archdiocesan defendants—the plaintiff was left no worse off by the effort, eliminating section 323(a) as a basis for liability, and in any event, there is

no contention that the plaintiff "relied" upon any act or omission of the Archdiocesan defendants in any manner relevant to this case; there can also be no liability under section 323(b).

It is thus clear that section 323 of the Restatement (Second) of Torts has no application to this case.

## 2. *The Archdiocesan Defendants' Liability Was Not Previously Decided*

The plaintiff also contends that, by denying the Archdiocesan defendants' motion for summary judgment, in November 2000, I implicitly found that those defendants owed a duty to the plaintiff. That is simply not the law. Denial of a defense motion for summary judgment does not necessarily imply that the plaintiff will prevail at trial, but only that—at a particular point in time—the evidence is not of such crystalline quality as to justify releasing the defendants from the case. The plaintiff's argument on coordinate jurisdiction simply misses the point.

## 3. *The Plaintiff Was Not Entitled to Recusal or a Mistrial*

The plaintiff moved for a mistrial just once, at the end of opening speeches, following what counsel considered to be improper remarks made by counsel for the city. This motion, unrelated to any allegations of bias on my part, was properly denied.

The plaintiff also moved for recusal just once, while the jury was being selected, on the basis that I had im-

properly restricted his ability to ask the prospective jurors questions. This motion was also unrelated to any allegations of bias, and was also properly denied.

In order to preserve an issue of alleged bias for appellate review, the complaining party must (a) make timely objection, and (b) raise the issue in post-trial motions. *Goodheart v. Casey,* 523 Pa. 188, 565 A.2d 757 (1989). The only exception is in the rare instance where the complaining party can show that having objected during trial would only have made matters worse; the fact that the objection would likely have been overruled—without more—is not sufficient. *Commonwealth v. Hammer,* 508 Pa. 88, 494 A.2d 1054 (1985).

Here, the plaintiff made no objection on the basis of alleged bias to anything that transpired during trial, and has made no showing that such an objection—if made— would only have aggravated the situation. Thus, the issue of bias has been waived.

As evidence of my alleged bias, the plaintiff complains that I denied the motions of the Archdiocesan defendants (and the city) for summary judgment without considering the law or the facts. Evidently, plaintiff's counsel believes that I should have *granted* those motions, and the fact that I did not do so shows that I was biased against him. This argument is difficult to comprehend, particularly in view of my comments, made September 26, 2001—outside the presence of the jury, and *not* in open court as the plaintiff alleges—as to why I had denied those motions:

"I was looking for a reason *not* to grant summary judgment because I knew there was only $15,000 worth of

insurance coverage in this case by the perpetrator of this horrible loss and I looked for any reason to keep the case alive against empty[3] pockets. I admit it." (N.T. 9/26/2001, p. 23.)

I knew (or at least strongly suspected) very early in my involvement with this matter that the plaintiff would be unable to establish the existence of a duty running from the Archdiocesan defendants (or the city) to the plaintiff, and that a compulsory nonsuit would be the likely outcome at trial. There is no dispute that the plaintiff was grievously injured, that defendant Mark Piecyk was criminally negligent[4] and that—in the absence of liability on the part of the city or the Archdiocesan defendants—the ultimate judgment in this matter would almost certainly be uncollectible.

I was able, through colloquy with counsel for the City of Philadelphia to secure a settlement offer from the city, which the plaintiff accepted, and which I accurately characterized as "a gift," given what I then knew would be the outcome. (N.T. 9/26/2001, p. 23.) Had I not "kept the case alive," the plaintiff would not have received the city's $75,000 payment.

This was, in short, a terrible, heart-rending case. Liability was conceded, and damages were obviously quite significant, but the only defendant who, as a matter of law, could ultimately be held responsible had only the

---

3. Probably a transcription error; given the context, I almost without question said "against *other than* empty pockets."

4. Mr. Piecyk was convicted of three counts of simple assault and three counts of recklessly endangering another person, and served time in prison.

most minimal resources, several orders of magnitude less than the amount of the jury award. If I showed favoritism toward *any* party during this trial, it would have been toward the plaintiff, for whom the system has utterly failed.

## CONCLUSION

For the reasons set forth above, which give me no pleasure, my decision to deny post-trial relief should be affirmed. In addition, I implore the Pennsylvania Legislature to re-examine the financial responsibility law to determine a minimum amount of liability coverage that is more consistent with the economic realities of the 21st century.