J-A24011-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| TONY D. SAMENTO | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| NANCI M. SAMENTO | : | No. 1890 MDA 2017 |

Appeal from the Judgment Entered November 6, 2017
In the Court of Common Pleas of Cumberland County
Civil Division at No(s): 2009-08051

BEFORE: OTT, J., McLAUGHLIN, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY OTT, J.:                    **FILED JANUARY 16, 2019**

Tony D. Samento ("Husband") appeals from the judgment entered November 6, 2017, in the Cumberland County Court of Common Pleas awarding Nanci M. Samento ("Wife"), $4,000.00 plus attorneys' fees, for Husband's willful breach of the parties' Marital Settlement Agreement ("MSA"). On appeal, Husband argues: (1) the trial court denied him procedural due process when it abruptly terminated the hearing during his testimony; (2) the trial court abused its discretion when it denied Husband's post-hearing recusal motion; and (3) Wife failed to state a cause of action for breach of the MSA. For the reasons below, we vacate the judgment, and remand for further proceedings before a different trial court judge.

Much of the long and contentious history between the parties is not pertinent to this appeal. Relevant herein, Husband filed a complaint in divorce in November of 2009, followed shortly thereafter by a complaint seeking

custody of the parties' three minor children.[1] On October 3, 2014, the parties

executed an MSA, which provides, *inter alia*:

> Husband and Wife shall not molest, harass, disturb or malign each other or the respective families of each other, nor compel or attempt to compel the other to cohabit or dwell by any means or in any manner whatsoever with him or her.

Marital Settlement Agreement, 10/3/2014, at ¶ 3. Paragraph 18 of the MSA

permits a party to sue for damages upon a breach of the agreement. **See id.**

at ¶ 18. A final decree in divorce was entered on October 14, 2014.

Sometime during the divorce proceedings, Husband hired a private

investigator to follow Wife and find out if she was having an affair. The

investigator obtained video of Wife with her paramour, a Pennsylvania State

Trooper, in the parking lot of a Boscov's Department Store.[2] In November of

2014, Wife received an email with a link to a YouTube video titled, "Hoes Get

Caught II." The video, posted publicly on YouTube, was an edited version of

the private investigator's video set to music. It displayed her name across

the video, and phrases such as "pigs and hoes." N.T., 10/5/2017 (before

---

[1] The parties have five children, three of whom were minors and still living at home at the time the custody complaint was filed: a biological daughter, C.M.S. (born in November of 1992), and two sons whom they adopted in 2005, A.M.S. (born in May of 1999) and E.D.S. (born in July of 2000). The parties also have two adult biological daughters, B.N.S. (born in January of 1983) and T.C.S. (born in January of 1986).

[2] The video was not provided to this Court as part of the certified record, and is described much differently by the parties. According to Wife, the video showed her and her paramour kissing while fully clothed. **See** N.T., 10/5/2017 (before recess), at 7. According to Husband, the video recorded a more explicit sexual encounter. **See** N.T., 10/5/2017 (after recess) at 33.

recess), at 10. The video was removed two weeks later; however, Wife was not able to uncover who posted the video.

Meanwhile, Husband sought to terminate Wife's parental rights with regard to their two adopted sons, so that his current wife, Stepmother, could adopt them. Wife's parental rights were subsequently terminated in November of 2015, and Stepmother later adopted the boys. After the adoption, Wife received a letter postmarked October 28, 2016, which included a photograph of the boys, Husband, and Stepmother, in the courtroom when the adoption was finalized. The photo had "FYI" written on it, and the return address on the envelope read, "Karma A. Betch," and listed the address of the Boscov's parking lot where the private investigator's video originated. *Id.* at 26.

On March 9, 2017, Wife filed a motion for breach of the MSA. Specifically, she asserted Husband violated Paragraph 3 of the agreement by (1) publicly posting an explicit and disparaging video of her to YouTube; (2) speaking to a co-worker of her current husband about her; and (3) mailing to her a photograph of Stepmother adopting her two children. *See* [Wife's] Motion for Breach of Marital Settlement Agreement, 3/9/2017, at ¶¶ 3-6. On July 26, 2017, Wife filed a Request for Discovery, seeking from Husband, *inter alia*, the name of the person who "produced the video of [Wife,]" and "any and all copies of the video in possession" of Husband. [Wife's] Request for Discovery, 7/26/2017, at 1. Husband filed an Answer and Objections to Wife's discovery request, asserting, *inter alia*, her request was "overbroad and

unspecific and does not include the date and time and subject matter of the video sought," and, in any event, was protected by attorney/client privilege. [Husband's] Answers and Objections to [Wife's] Request for Discovery, 8/25/2017, at 1.

A hearing was conducted by the trial court on October 5, 2017. Wife testified first, before a recess, after which her former psychologist testified. Husband then testified briefly until the trial court abruptly ordered him to step down from the witness chair, and stated the hearing would be continued another day. The court also directed both attorneys to meet in chambers; however, the in-chambers discussion was not transcribed. On November 6 2017, the trial court entered the following order and judgment in favor of Wife:

> AND NOW, this 6th day of November 2017, upon consideration of the relevant testimony, which includes information that [Husband's] counsel had delivered a copy of the video at issue to an innocent injured spouse, counsel's revelation that resulted in an in-chambers discussion, wherein [Husband's] counsel further admitted to having a copy of said video in a box, in her garage, and that video was directed to be turned over as discovery to [Wife's] counsel, and, in review of the facts, which include [Husband's] gross inability to answer questions truthfully, Judgment is hereby GRANTED in favor of [Wife] on the claim of breach of the Marital Settlement Agreement.

Order, 11/6/2017, at 1. The court awarded Wife $4,000.00 for Husband's willful breach of the MSA,[3] and directed Husband to pay Wife's counsel fees in

---

[3] The trial court specifically stated it was not awarding Wife any damages for intentional infliction of emotional distress. *See* Order, 11/6/2017, at 1.

- 4 -

the amount of $3,742.26.  ***See id.***  Husband filed a timely appeal on December 5, 2017.[4]

That same day, Husband filed three motions in the trial court:  (1) a motion to obtain the digital audio recording of the October 5th hearing; (2) a motion to amend the record to include opinions and documents from the termination of parental rights proceedings; and (3) a statement in absence of transcript concerning the October 5th in-chambers discussion.  On December 28, 2017, Husband also filed a motion seeking the trial court recuse itself from all "further judicial decision making regarding the case."  Motion to Recuse, 12/28/2017, at 1.  On January 16, 2018, the trial court entered an order granting Husband's motion to obtain a copy of the digital audio file from the October 5th hearing, with the stipulation that it would remain sealed.  ***See*** Order, 1/16/2018.

On February 5, 2018, the trial court issued an opinion, pursuant to Pa.R.A.P. 1925(a), in support of its determination that Husband breached the MSA, and its corresponding judgment in favor of Wife.  On February 14, 2018, Husband filed a supplemental motion seeking to "correct and amend" the record with regard to several statements in the trial court's opinion. Supplemental Motion to Correct and Amend the Record Pursuant to Pa.R.A.P.

---

[4] On December 14, 2017, the trial court ordered Husband to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Husband complied with the court's directive, and filed a concise statement on December 28, 2017.

1926, 2/14/2018, at 1. Thereafter, on March 7, 2018, the trial court issued an order and opinion, denying Husband's outstanding post-judgment motions filed on December 5, 2017. It also issued an order on March 13, 2018, denying Husband's supplemental motion to correct the record.

In his first issue on appeal, Husband contends the trial court denied him procedural due process when, after permitting Wife to present testimony for 90 minutes,[5] it terminated the hearing after Husband, himself, testified for only seven minutes. *See* Husband's Brief at 25-26.

By way of background, there were two videos discussed at the hearing. The first, obtained by the private investigator, featured Wife and her paramour engaged in some type of illicit encounter. The second video was an edited version of the first, which included music and text. That video was posted publicly on YouTube.

At the hearing, Wife testified in detail about the anxiety she felt after receiving an email with a link to the YouTube video. *See* N.T., 10/5/2017 (before recess), at 11-14. She also testified extensively regarding derogatory comments Husband posted about her on Facebook and Twitter. *See id.* at 17-24. The court ultimately ruled the social media posts were inadmissible for anything other than corroboration of the language later employed in the

---

[5] Our review of the digital audio file from the hearing reveals Wife testified on her own behalf for almost an hour, after which she presented the testimony of her former psychologist. Husband's counsel was in the middle of his direct examination when the trial court terminated the proceedings.

anonymous letter Wife received about the adoption. *See* N.T., 10/5/2017 (after recess), at 24-27. Lastly, Wife described the letter she received at her home residence after her sons were formally adopted by Stepmother. She testified the envelope was postmarked October 28, 2016, and included the following in the return address area:

> In the top left corner it is coming from --- the name is Karma A. Betch, B-e-t-c-h. The address is actually the address of the Boscovs store, the parking lot where the video originated, and it is coming from Fairless Hills.

N.T., 10/5/2017 (before recess), at 26. Wife stated that inside the envelope was a photograph of her sons "going through the adoption with Judge Masland," with "FYI" written on it. *Id.* Wife described her fear of Husband, and his unpredictability, and sought $200,000.00 in damages for emotional distress. *See id.* at 27-30. Under cross-examination, Wife admitted the only two alleged contacts Husband had with her **after** the parties executed the MSA were the email link and the letter with the photograph. *See id.* at 33-34. She insisted the letter came from Husband, although she did not recognize the handwriting on the envelope, and admitted other people knew of the video of her in the Boscov's parking lot. *See id.* at 34-35.

The court then took a short recess, after which Wife's counsel called her former psychologist, Dr. Laurie S. Pittman, to testify. Dr. Pittman explained that she saw Wife for 11 sessions between August of 2014 and April of 2015. *See* N.T., 10/5/2017 (after recess), at 7. Dr. Pittman described some of Wife's symptoms, as well as her own concern that Wife may suffer from Post-

Traumatic Stress Disorder ("PTSD"). ***See id.*** at 10-11. However, Dr. Pittman acknowledged she did not diagnose Wife with PTSD, "[i]t was [just her] concern." ***Id.*** at 21.

After Husband's attorney objected to certain evidence, and renewed a motion to dismiss, she called Husband as her first witness. ***See id.*** at 29. Husband denied ever having seen the YouTube video Wife described, or sending Wife the photo of the adoption proceedings. ***See id.*** at 30-31. Husband explained the photo was taken in the courtroom, and later posted on his public Facebook page so that it would have been accessible to anyone. ***See id.*** at 31. Husband's attorney acknowledged that she took the photo and sent copies to Husband, his daughters, and the adoption Judge. ***See id.*** at 32. Counsel then questioned Husband regarding the unedited video of Wife obtained by the private investigator. Husband described in detail the sexual encounter he claimed he witnessed on the video, as well as lurid statements Wife allegedly made to him when he confronted her. ***See id.*** at 34. At that point, the following exchange took place:

> Q [by Husband's Counsel:]   So have you ever seen any video of [Wife] on You Tube?
>
> [Husband:] No, I have not.
>
> Q     And has anybody you know told you they knew about a video on You Tube?
>
> A     No. No one's ever told me anything other than the fact that when you called me because the State Police had called.
>
> Q     And to your knowledge did the State Police investigate this whole issue?

A       I do believe that they did, and from what I understand when they found out it was Corporal Thomas Tarsavage –

[Wife's Counsel]:  Judge, this is all hearsay.

THE COURT:  Well, I don't know what he is saying so I don't know.

[Wife's Counsel:]  He was indicating what he learned from the State Police.

THE COURT:  And I don't –

[Husband:]  I'm sure there's a record of this.

THE COURT:  Sir.

[Husband:]  I'm sorry.

THE COURT:  Sit down now.  Down.  Out of that seat.

[Husband:]  I'm sorry.

THE COURT:  Move it like you have got a purpose.

[Husband:]  I'm sorry, Your Honor.

THE COURT:  I'll tell you when I'm coming back.  It's not going to be today.  You get your client under control or I am going to tear him up on the stand.  Do you understand me?

[Husband's Counsel:]  I'm not sure, Your Honor, but I'll try to.

THE COURT:  He talks over me one more time, I am going to rule summarily against him.  Do you understand?

[Husband's Counsel:]  Yes, Your Honor.

THE COURT:  Get him out of here.  I want to see both of you in chambers.

*Id.* at 34-35.  The court then proceeded to conduct an in-chambers conference that was not transcribed.

It is important to bear in mind that while the trial court's November 6, 2017, order and judgment granting Wife relief referred only to the issue

- 9 -

concerning the video, the court clarified in its February 2018 opinion that Wife did not prove "the November 2014 YouTube video [was] a breach" of the MSA, since she was unable to "obtain sufficient proof of authorship."[6]  Trial Court Opinion, 2/5/2018, at 19.  Rather, the court determined Husband breached the MSA only with respect to the 2016 letter Wife received in the mail:  "The evidence presented shows, by a preponderance of the evidence, that Husband sent the mail piece that contained the adoption photo, which is a clear breach of the MSA requirements[.]" *Id.* at 17.

With this background in mind, we turn to Husband's claim that the trial court denied him procedural due process.  *See* Husband's Brief at 25-29.

"The fundamental requisite of due process of law is the opportunity to be heard."  *Grannis v. Ordean*, 234 U.S. 385, 394 (1914).  At its core, procedural due process requires "adequate notice, opportunity to be heard, and the chance to defend oneself before a fair and impartial tribunal having jurisdiction over the case." *Garr v. Peters*, 773 A.2d 183, 191 (Pa. Super. 2001) (citation omitted).  *See Hahalyak v. A. Frost, Inc.*, 664 A.2d 545, 550 (Pa. Super. 1995) ("Due process requirements are satisfied when a person is given notice and opportunity to be heard and defend in an orderly proceeding.").  Essentially,  "[d]ue process rights entitle [a party] 'to be heard

---

[6] Our review reveals Wife presented very little testimony regarding the purported conversation Husband had with her current husband's co-worker. *See* N.T., 10/5/2017 (before recess), at 16-17.  Moreover, the trial court did not even discuss this claim in its opinion.  Accordingly, this alleged conversation provides no basis for relief and we need not address it further.

at a meaningful time and in a meaningful manner.'" ***BuyFigure.com, Inc.***
***v. Autotrader.com, Inc.***, 76 A.3d 554, 559 (Pa. Super. 2013) (citation
omitted), *appeal denied*, 84 A.3d 1061 (Pa. 2014).

Nevertheless, as Wife emphasizes in her brief, "a party's due process
rights are not without limits." Wife's Brief at 15. Indeed, while a criminal
defendant has a constitutional right to be present at his trial, the United States
Supreme Court has held:

> [A] defendant can lose his right to be present at trial if, after he
> has been warned by the judge that he will be removed if he
> continues his disruptive behavior, he nevertheless insists on
> conducting himself in a manner so disorderly, disruptive, and
> disrespectful of the court that his trial cannot be carried on with
> him in the courtroom.

***Illinois v. Allen***, 397 U.S. 337, 343 (1970) (footnote omitted). Similarly, in
***Taylor v. Illinois***, 484 U.S. 400, 413-414 (1988), the Supreme Court
rejected the defendant's claim that his right to compulsory due process was
violated when the trial court excluded the testimony of a last-minute witness
who was not identified during discovery, rather than imposing a less drastic
sanction. The ***Taylor*** Court reasoned:

> A trial judge may certainly insist on an explanation for a party's
> failure to comply with a request to identify his or her witnesses in
> advance of trial. If that explanation reveals that the omission was
> willful and motivated by a desire to obtain a tactical advantage
> that would minimize the effectiveness of cross-examination and
> the ability to adduce rebuttal evidence, it would be entirely
> consistent with the purposes of the Compulsory Process Clause
> simply to exclude the witness' testimony.

*Id.* at 415. Here, Wife insists that it was the "abhorrent behavior" of Husband and his counsel[7] – which she claims included Husband's "gross inability to answer questions truthfully," and counsel's actions in making "materially false statements to the trial court," retaining a copy of the private investigator's video in her garage, and sending a copy of that video to third parties – that led to the trial court's decision to suspend the hearing. Wife's Brief at 13, 19.

In its two opinions, the trial court provided the following explanation for its decision to stop the hearing, and subsequently enter judgment for Wife, without providing Husband a further opportunity to present his case:

> Husband's launch into an *ad hominem* attack of Wife, rather than relevant factual testimony, coupled with the use of legally dubious methods to gain advantage over Wife bespeaks of Husband's blatant inability to be candid. In fact, Husband's patent inconsistency in the pleading and discovery responses, in stark contrast to his testimony, was in a word – shocking. Husband's prehearing responses did not indicate any testimonial facts beyond denials and offered no knowledge of demonstrative evidence. Husband's pattern of dishonesty throughout the pleadings and testimony, coupled with Husband's disingenuous and dilatory responses with discovery requests, support the finding that further proceedings would be a waste of judicial time.

Trial Court Opinion, 2/5/2018, at 18-19.

> [Husband] places dramatic importance on the court "screaming" at [him]. Anyone who has been involved in organized sports would easily recognize the difference between projecting one's voice through the use of the diaphragm to provide loud, firm command directions, versus screaming. The commands to [Husband] were not laced with profanity nor were any derogatory comments made. No comment was made that suggests hostility

---

[7] Wife's Brief at 15.

or bias. A judge has no friends to reward, no enemies to punish, only justice that is to be served. There is no animus toward [Husband] or [Wife].

Trial Court Opinion, 3/7/2018, at 4.

It is evident from a review of the court's opinions that its frustration with Husband and his counsel stems from Wife's discovery request for information regarding "the video." [Wife's] Request for Discovery, 7/26/2017, at 1. Husband's answer to Wife's request included an objection, as well as his assertions that her request was "overbroad and unspecific[,] …protected from disclosure as attorney work product and by attorney/client privilege[, and] not relevant or material to the proceedings." [Husband's] Answers and Objections to [Wife's] Request for Discovery, at 1. However, during the in-chambers post-hearing discussion, Husband's counsel purportedly admitted she had a copy of the private investigator's video "in a box in her garage." Trial Court Opinion, 2/5/2018, at 14. The court concluded Husband's answers to Wife's interrogatories constituted "obfuscation." Trial Court Opinion, 3/7/2018, at 4.

Our review of the record, and particularly the transcript from the October 5, 2017, hearing and the digital audio recording of that hearing, reveals no basis for the trial court's sudden decision to terminate the hearing. Although Husband did provide a lurid description of what he alleged was recorded on the private investigator's video, and a conversation he allegedly had with Wife about her sexual escapades, the trial court did not provide Husband with any warning that his testimony had crossed a line. Moreover, the court had previously permitted Wife to read a series of disturbing

- 13 -

comments Husband had allegedly posted on social media about Wife *before* the MSA was executed. ***See*** N.T., 10/5/2017 (before recess), at 19-25. Therefore, its perception that Husband's testimony constituted an attack on Wife, while permitting Wife to attack Husband's character, is a mischaracterization of the proceedings.

The trial court's opinion appears to sanction Husband for a discovery violation. While a trial court has the authority to impose a discovery sanction under the Rules of Civil Procedure,[8] here, it is important to recognize that Wife's interrogatories requested information regarding "the video" without explicitly stating which of the two videos at issue - the private investigator's video or the edited You Tube video – she was referring. [Wife's] Request for Discovery, 7/26/2017, at 1. Accordingly, Husband's counseled objection was appropriate. Wife could have, but did not, file an amended, more specific discovery request.

More importantly, while the court was clearly frustrated by what it considered to be legal gamesmanship regarding the video, it ultimately determined that Wife did not prove "the November 2014 YouTube video was a breach" of the MSA. Trial Court Opinion, 2/5/2018, at 19. Therefore, the fact that counsel may have had a copy of the original video (not the edited

---

[8] ***See*** Pa.R.C.P. 4019(a)(1) ("The court may, on motion, make an appropriate order if[,] a party fails to serve answers, sufficient answers or objections to written interrogatories"). ***See also*** Pa.R.C.P. 4019(c) (listing actions the court may take upon a violation of subsection (a)).

You Tube version) in her garage is of no moment. The court's frustration with counsel should not have been used to prejudice Husband.

Here, the only breach the court sanctioned Husband for was the letter he purportedly sent to Wife with a picture from the adoption proceedings. *See* Trial Court Opinion, 2/5/2018, at 17-18. The trial court found that "the opportunity for this letter to get to Wife in this fashion with this specific detail is only with a finite number of people – Husband and his attorney." *Id.* at 18. However, the court made this determination without permitting Husband to complete his testimony or present any evidence or witnesses in his defense. Although the court justified its action, in part, by commenting that Husband's current defenses were not pled or revealed before the October 5th hearing, the court did not discontinue the hearing for that reason. *See* Trial Court Opinion, 3/7/2018, at 5. Again, our review of both the transcript of the October 5, 2017, hearing and the digital audio recording, reveals no basis for the court's abrupt termination of Husband's case. Moreover, the court has provided no legitimate reason for its failure to reschedule the hearing. Accordingly, we are compelled to conclude Husband's due process rights were violated, and he is entitled to a new hearing on Wife's claim that he breached the MSA.

In his second issue, Husband argues the trial court abused its discretion when it denied his motion for recusal. We agree.

Our review of a trial court's denial of a motion for recusal is well-settled:

We review the trial court's denial of the recusal motion for abuse of discretion. *Goodheart v. Casey*, 523 Pa. 188, 565 A.2d 757, 763 (1989). The trial court must conduct a two tiered analysis:

First, whether the Justice would have a personal bias or interest which would preclude an impartial review. This is a personal and unreviewable decision that only the jurist can make. Second, whether his participation in the matter would give the appearance of impropriety. [T]o perform its high function in the best way, justice must satisfy the appearance of justice.

*Id.* at 764 (internal quotation marks omitted).

*Becker v. M.S. Reilly, Inc.*, 123 A.3d 776, 778 (Pa. Super. 2015). "Where a jurist rules that he or she can hear and dispose of a case fairly and without prejudice, that decision will not be overruled on appeal but for an abuse of discretion." *Overland Enter., Inc. v. Gladstone Partners, LP*, 950 A.2d 1015, 1021 (Pa. Super. 2008).

In order to prevail on a recusal motion, the party seeking recusal must "produce evidence establishing bias, prejudice or unfairness which raises a substantial doubt as to the jurist's ability to preside impartially." *In re A.D.*, 93 A.3d 888, 892 (Pa. Super. 2014) (citation omitted). It is important to bear in mind:

The inquiry is not whether a jurist was in fact biased against a party, but whether, even if actual bias or prejudice is lacking, the conduct or statement of the court raises "an appearance of impropriety." The rule is simply that "disqualification of a judge is mandated whenever 'a significant minority of the lay community could reasonably question the court's impartiality.'"

*Commonwealth v. Stevenson*, 829 A.2d 701, 705 (Pa. Super. 2003) (citations omitted).

Husband sought the trial court's recusal after the court forcefully terminated the proceedings during his testimony, and declined to reschedule the hearing before entering judgment for Wife. Husband encouraged this

- 16 -

Court to listen to the audio recording of the hearing in order to fully grasp the court's hostility toward Husband and his counsel, which we did. **See** Husband's Brief at 32-33. Moreover, Husband contends the court exhibited animosity towards him and his counsel throughout the proceedings, ignored facts of record, and prejudged his defense before he presented it. **See id.** at 36-41.

Upon our review of the record in the present case, we agree the trial court's abrupt termination of the hearing, and its subsequent comments regarding Husband and his counsel, raise an appearance of bias. While the transcript of the hearing is disconcerting - particularly since it does not appear Husband or his counsel was warned of any impropriety prior to the termination of the hearing – our review of the audio recording confirms the hostility of which Husband complains. Further, the court spent more than two pages of its February 5, 2018, opinion, listing malicious actions Husband had previously admitted to having taken against Wife in filings from 2010 and 2011, which were completely irrelevant to the alleged breach of the October 2014 MSA. **See** Trial Court Opinion, 2/5/2018, at 4-6. Moreover, after permitting Wife to read into the record social media posts Husband purportedly made about her prior to the execution of the MSA,[9] the court chastised Husband for describing the encounter on the private investigator's video "in lurid detail, maligning and casting further aspersions against Wife that were not [pled] and had no

_____

[9] **See** N.T., 10/5/2017 (before recess), at 19-25.

relevance to this post-divorce action, which he would not refrain himself from presenting." ***Id.*** at 14 (footnote omitted). Furthermore, the court characterized Husband as having exhibited a "pattern of dishonesty throughout the pleadings and testimony," which "coupled with [his] disingenuous and dilatory responses with the discovery requests, support[ed] its] finding that further proceedings would be a waste of judicial time." ***Id.*** at 19.

However, while the court criticized Husband's purported failure to comply with discovery requests, we must emphasize that Husband **did respond** to Wife's request for interrogatories, albeit in the form of an objection. Moreover, as noted previously, Wife's request for information concerning "the video" was not specific, as there were two videos at issue. This is not a case where Husband failed to respond at all to Wife's discovery requests or ignored a court's direct order to provide a more specific response. Therefore, the court's hostility toward Husband based upon his discovery responses is unjustified.[10]

Accordingly, despite the trial court's assurance that it harbored no animus toward Husband, we conclude upon review of the record before us

---

[10] It merits mention that the court relied **exclusively** on concerns involving the supposed "video" discovery violation in its November 6, 2017, order granting Wife relief. It was not until the court issued its Rule 1925(a) opinion that it clarified it was granting relief only on Wife's claim that Husband sent her the adoption photo in October of 2016.

that the court's comments regarding Husband and his counsel, as well as its actions during the hearing, were intemperate, and raise an appearance of bias. Therefore, we conclude the court abused its discretion when it denied Husband's motion for recusal, vacate the judgment entered in favor of Wife, and remand this case for a new hearing before a different trial judge.[11]

Judgment vacated. Case remanded for a hearing before another trial judge. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/16/2019

---

[11] Because we conclude Husband is entitled to a new hearing, we need not address his final claim that Wife failed to state a cause of action for breach of the MSA.