J-S35025-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CHINA MARIE MCPHERSON | : | |
| | : | |
| Appellant | : | No. 548 MDA 2025 |

Appeal from the Judgment of Sentence Entered April 3, 2025
In the Court of Common Pleas of Perry County Criminal Division at
No(s): CP-50-CR-0000433-2023

BEFORE: OLSON, J., MURRAY, J., and LANE, J.

MEMORANDUM BY MURRAY, J.:       **FILED: NOVEMBER 5, 2025**

China Marie McPherson (Appellant) appeals from the judgment of sentence entered following her guilty plea to one count of criminal attempt (theft by deception – false impression), graded as a third-degree felony.[1] After careful review, we affirm.

As the trial court explained,

the charges in this matter involve allegations that Appellant fraudulently attempted to receive moneys from federal funds[,] administered by [Perry County,] in a rental assistance program implemented during the Covid-19 pandemic.

The allegations of fraud came to light through information uncovered by one of [the] Perry County Commissioners[, Brenda Watson (Commissioner Watson)]. Prior to contacting the Pennsylvania State Police, [Commissioner Watson,] who discovered Appellant's crime[,] had reached out to the President Judge of the 41st Judicial District[, The Honorable Kenneth A.

---

[1] **See** 18 Pa.C.S.A. §§ 901, 3922(a)(1).

Mummah (President Judge Mummah),] to inquire what she should do with the information she had uncovered. [President Judge Mummah] referred [Commissioner Watson] to the Pennsylvania State Police.

Trial Court Opinion, 6/19/25, at 2.

Appellant subsequently was charged with attempted theft by deception. Appellant filed a pretrial motion to recuse all commissioned judges of the 41st Judicial District. The Honorable Andrew Bender (Judge Bender), a commissioned judge in the 41st Judicial District, denied the recusal motion.

Appellant thereafter pled guilty to attempted theft by deception. Judge Bender heard and accepted Appellant's guilty plea. On April 3, 2025, Judge Bender sentenced Appellant to 6-12 months in jail, followed by two years of probation. Judge Bender further ordered Appellant to complete 250 hours of community service.

Appellant filed no post-sentence motions, but timely filed a notice of appeal. Appellant and the trial court have complied with Pa.R.A.P. 1925.

Appellant presents the following issues for our review:

[1.] Did the trial court err in not granting [Appellant's] motion for recusal due to [Commissioner Watson] having had contact with [President Judge Mummah] regarding the underlying facts[,] which led to the filing of the criminal charges?

[2.] Did the trial court abuse its discretion by imposing an incarcerative sentence in light of a prior record score of zero coupled with the appearance of impropriety?

Appellant's Brief at 8.

Appellant first argues that the trial court improperly denied her motion to recuse. *Id.* at 12. Appellant asserts that a county commissioner discovered that "Emily Miller" had filed an application, for $11,475.00 in rental assistance, for a residence located at 3034 Racoon Valley Road in Perry County. *Id.* According to Appellant, the application was forwarded to Commissioner Watson, who "discovered that the address was a vacant rental property [and] not occupied by an 'Emily Miller.'" *Id.*

Appellant asserts that Commissioner Watson contacted President Judge Mummah, who referred Commissioner Watson to the Pennsylvania State Police. *Id.* Appellant acknowledges that she "flew from Mississippi to collect the rental check at [Commissioner Watson's] office and was taken into custody by the Pennsylvania State Police." *Id.* at 13.

Appellant argues that the communication between Commissioner Watson and President Judge Mummah warranted the recusal of commissioned judges from the 41st Judicial District. *Id.* In support, Appellant asserts that

> the chief complaining witness, [Commissioner Watson], who is responsible for determining the court's budget, and who approached President Judge [Mummah] regarding [] Appellant's case, created an appearance of impropriety if the judges here heard the case.

*Id.* Appellant contends that the contact between Commissioner Watson and President Judge Mummah created a

> "sense of impropriety" in that the bench had knowledge prior as to the case, and the commissioners control the "purse strings" of the court's budget.

- 3 -

This appearance of impropriety weighs heavily with [] Appellant. Appellant had filed the Motion for Recusal to obtain a judge not associated [with] or accountable to the commissioners for budget control. The fact that the monies were from funds allocated to the County of Perry, controlled by the Commissioners, who control the [c]ourt's budget, along with the contact made by [Commissioner Watson] with [] President Judge [Mummah] on the issue, create a[n] "appearance of impropriety" which would have easily been cured with the assignment of a Senior Judge.

*Id.* at 15.

In support, Appellant points out Judge Bender's denial of her request for a continuance based on outstanding discovery, and the denial of her request to participate in a hearing by means of a video conference, "due to her residence being in Mississippi." *Id.* Appellant also asserts that Commissioner Watson played an important role as a Commonwealth witness in the prosecution of this case.[2] *Id.* at 16.

In cases where a party seeks to recuse a jurist from hearing their case based upon a conflict of interest,

the motion is "directed to and decided by the jurist whose impartiality is questioned." *League of Women Voters v. Commonwealth*, … 179 A.3d 1080, 1083 (Pa. 2018) (citing

---

[2] We observe that by entering a guilty plea, a defendant waives her right to challenge, on direct appeal, all non-jurisdictional defects except the legality of the sentence and the validity of the plea. *Commonwealth v. Lincoln*, 72 A.3d 606, 609 (Pa. Super. 2013). "A defendant wishing to challenge the voluntariness of a guilty plea on direct appeal must either object during the plea colloquy or file a motion to withdraw the plea within ten days of sentencing." *Id.* at 609-10. Although Appellant filed no motion to withdraw her guilty plea, it is unclear whether Appellant preserved this challenge during the plea colloquy. Further, the trial court addressed this issue in its opinion. In an abundance of caution, we address Appellant's issue.

> ***Commonwealth v. Travaglia***, … 661 A.2d 352, 370 (Pa. 1995)).
> [The Pennsylvania Supreme Court has] explained the applicable
> standard of review for a motion seeking a jurist's disqualification
> as follows:
>
>> In disposing of a recusal request, a jurist must first make
>> a conscientious determination of his or her ability to assess
>> the case before the court in an impartial manner, free of
>> personal bias or interest in the outcome. "This is a
>> personal and unreviewable decision that only the jurist can
>> make." ***Goodheart v. Casey***, … 565 A.2d 757, 764 ([Pa.]
>> 1989). Once satisfied with that self-examination, the jurist
>> must then consider whether or not continued involvement
>> in the case would tend to undermine public confidence in
>> the judiciary. ***Id.*** In reviewing a denial of a disqualification
>> motion, we recognize that our judges are honorable, fair
>> and competent. Once the decision is made, it is final....
>> ***Reilly by Reilly v. SEPTA***, … 489 A.2d 1291, 1300 ([Pa.]
>> 1985).
>
> ***Id.*** (citing ***Travaglia***, 661 A.2d at 370).

***In re Appeal of Prospect Crozer LLC from the Decision of the Bd. of
Assessment Appeals of Del. Cty., PA***, 328 A.3d 37, 68-69 (Pa. 2024)
(footnote omitted).

As our Supreme Court has explained,

[t]he "only written directive that arises in the recusal context
comes by way of reference to Rule 2.11 of the Code of Judicial
Conduct [(Code)],[3] which has been employed to inform the

---

[3] Rule 2.11 provides, in relevant part, as follows:

A judge shall disqualify himself or herself in any proceeding in
which the judge's impartiality might reasonably be questioned,
including but not limited to the following circumstances:

*(Footnote Continued Next Page)*

- 5 -

recusal standard." ***Lomas v. Kravitz***, … 170 A.3d 380, 394 (Pa. 2017) (Saylor, C.J., dissenting) (citing ***Goodheart***, 565 A.2d at 763). … **Requests for disqualification for conflicts of interest are considered pursuant to the guidelines set forth in the Code** …, **and we recognize this as a** "**personal and unreviewable decision that only the jurist can make**." ***League of Women Voters***, 179 A.3d at 1083….

***Id.*** at 69 (emphasis and footnote added).

In his opinion, Judge Bender considered and rejected Appellant's claim

of a conflict of interest:

> There appears to be a lack of any case law on point related to the issue of whether a trial judge should recuse when a likely witness in a case, in particular[,] a complaining witness, as here, is a sitting county commissioner. Accordingly, the court relied upon the Code of Judicial Conduct in making its assessment whether there were grounds for recusal.
>
> That analysis did not lead to the conclusion that the court should recuse simply because a chief witness in a case was a sitting county commissioner. **The undersigned judge had no knowledge of the allegations in this matter from any source other than the affidavit of probable cause filed with the criminal complaint, and the information provided by counsel at argument on the motion for recusal**. No complaints regarding the Appellant were ever made to the undersigned by the complaining witness county commissioner and no communication between the county commissioner and the undersigned took place at any time regarding Appellant's case.

Trial Court Opinion, 6/19/25, at 3 (emphasis added).

---

> (1) The judge has a personal bias or prejudice concerning a party or a party's lawyer, or personal knowledge of facts that are in dispute in the proceeding.

Pa. Code Judicial Conduct 2.11(A)(1).

Judge Bender further elucidated he had no personal knowledge of the information communicated to President Judge Mummah:

> It was the undersigned's understanding that [] President Judge [Mummah], to whom limited information was brought, simply referred the … county commissioner to the Pennsylvania State Police upon learning that a potential crime was being brought to his attention. **As such, the undersigned had no preconceived notions of how this case should have been adjudicated, and had no inability to be fair and impartial.** The court did not find that the Rules of Judicial Conduct necessarily even required the President Judge to recuse in this situation, let alone the undersigned, to whom no information was provided by the county commissioner who uncovered the Appellant's actions.

*Id.* at 4 (emphasis added).

Judge Bender also considered and rejected Appellant's assertion of a conflict based on Commissioner Watson's role in approving the judicial budget:

> While Appellant correctly pointed out that each county commissioner has the ability to vote on approving or disapproving of the court's annual budget and similar matters, the three commissioners each receive only one vote. Therefore, the [c]ourt did not conclude that simply because there is interaction between the two county departments involved, [*i.e.,*] the court and the commissioners in this particular case, that this created an appearance of impropriety.
>
> ….
>
> In determining the motion[,] the court was also concerned that recusal in a matter such as this would have had the effect of opening the door to setting an improper standard for when recusal should occur in future cases. For example, if the court were to recuse in a case such as this, where a complaining witness is a county commissioner, would the court then also need to recuse in matters involving alleged criminal conduct at the county prison, where the county commissioners, District Attorney, Sheriff, and a judge sit on the Prison Board? Or, would recusal be required when other county personnel were involved in a criminal matter either as defendants, witnesses, or victims?

*Id.* at 3-4.

Judge Bender finally addressed Appellant's evidence of alleged bias in his specific rulings:

> Appellant pointed to the denial of a continuance request on January 8, 2024, and the denial of a request to appear in court remotely on November 29, 2023, as evidence of bias from the court. However, as was noted at the argument on Appellant's motion, the continuance at issue was requested by Appellant due to an alleged discovery issue, wherein Appellant alleged she was awaiting additional discovery from the Commonwealth. Yet the Commonwealth surprisingly objected [to the continuance request]. Accordingly, the court assumed a dispute existed over this discovery issue and was prepared to address the issue at the scheduled hearing. Had a legitimate discovery issue existed, the court absolutely would have granted a continuance and charged the Rule 600 time against the Commonwealth. However, the issue then became moot when Appellant filed a Motion for Recusal and Continuance on January 10, 2024.
>
> Appellant also pointed to the denial of a request to appear in court remotely on November 29, 2023, as additional evidence of bias. However, this request was denied, as the court was attempting to move away from the routine video appearances which were common during the Covid-19 pandemic. Moreover, this was Appellant's first pretrial court appearance on serious felony charges. Appellant's motion made no mention of an anticipated resolution to the case. As such, the Court presumed (correctly given the December 5, 2023, Motion for Continuance which was then filed) that a continuance would be sought.
>
> The December 14, 2023, session of court[,] for which Appellant sought to appear remotely[,] had approximately one hundred other cases scheduled. Interrupting these other cases to connect video conferencing equipment[,] so that Appellant could simply request a continuance[,] was an extremely inefficient use of court time, and would have disrupted the other cases on the court's docket. Accordingly, the request to appear by video was properly denied.

*Id.* at 4-5 (punctuation modified). Judge Bender's analysis is supported by the record, and we discern no evidence of bias in his rulings. Further, we discern no abuse of the trial court's discretion in denying Appellant's recusal motion. Appellant's first issue merits no relief.

In her second issue, Appellant claims the trial court abused its discretion by imposing "an incarcerative sentence[,]" given Appellant's prior record score of zero, coupled with the "appearance of impropriety[.]"[4] Appellant's Brief at 17.

We are mindful that a challenge to the discretionary aspects of a sentence is not appealable as of right. ***Commonwealth v. Miller***, 275 A.3d 530, 534 (Pa. Super. 2022).

> Rather, an appellant challenging the sentencing court's discretion must invoke this Court's jurisdiction by (1) filing a timely notice of appeal; (2) **properly preserving the issue at sentencing or in a motion to reconsider and modify the sentence**; (3) complying with Pa.R.A.P. 2119(f), which requires a separate section of the brief setting forth a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence; and (4) presenting a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.[A.] § 9781(b), or sentencing norms.

*Id.*

---

[4] We note that Appellant's plea agreement included restitution, but did not include an agreed-upon sentence for probation or incarceration. Therefore, Appellant's plea agreement is a hybrid plea agreement. As such, Appellant is permitted to seek an appeal of the discretionary aspects of her sentence. ***See Commonwealth v. Heaster***, 171 A.3d 268, 271 (Pa. Super. 2017) (defining a hybrid guilty plea as one where "the parties did not bargain for a specific sentence, but negotiated as to a certain aspect of the sentence").

Our review of the record discloses that Appellant failed to preserve her sentencing issue in a post-sentence motion. Consequently, Appellant failed to properly invoke this Court's jurisdiction to review her discretionary aspects of sentencing issue. ***See id.***

Even if Appellant had properly invoked this Court's jurisdiction, her sentencing challenge lacks merit. Sentencing "is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion." ***Commonwealth v. Barnes***, 167 A.3d 110, 122 n.9 (Pa. Super. 2017) (*en banc*) (citation omitted).

> In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

***Commonwealth v. Reid***, 323 A.3d 26, 30-31 (Pa. Super. 2024) (citation omitted).

The Sentencing Code directs a trial court to follow the general principle that "the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S.A. § 9721(b). "[A] sentencing court has broad discretion in choosing the range of permissible confinements that best suits a particular defendant and the circumstances surrounding [her] crime." ***Commonwealth v. Hill***, 66 A.3d 365, 370 (Pa. Super. 2013) (citation

- 10 -

omitted). "We cannot re-weigh the sentencing factors and impose our judgment in the place of the sentencing court." ***Commonwealth v. Macias***, 968 A.2d 773, 778 (Pa. Super. 2009).

This Court has further recognized that,

"[w]here [pre-sentence investigation (PSI)] reports exist, we shall continue to presume that the sentencing judge was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." ***Commonwealth v. Devers***, … 546 A.2d 12, 18 ([Pa.] 1988).

> A [PSI] report constitutes the record and speaks for itself. In order to dispel any lingering doubt as to our intention of engaging in an effort of legal purification, we state clearly that [sentencing courts] are under no compulsion to employ checklists or any extended or systematic definitions of their punishment procedure. Having been fully informed by the pre-sentence report, the sentencing court's discretion should not be disturbed. This is particularly true … in those circumstances where it can be demonstrated that the judge had any degree of awareness of the sentencing considerations, and there we will presume also that the weighing process took place in a meaningful fashion.

***Id.*** … at 18. ***See also Commonwealth v. Tirado***, 870 A.2d 362 (Pa. Super. 2005) (explaining if sentencing court has benefit of PSI, then law presumes court was aware of relevant information regarding appellant's character and mitigating factors).

***Commonwealth v. Watson***, 228 A.3d 928, 936 (Pa. Super. 2020).

Instantly, the trial court, with the benefit of a PSI, sentenced Appellant within the standard range of the sentencing guidelines. N.T., 4/3/25, at 10. ***See also*** Trial Court Opinion, 6/19/25, at 7 (stating "the [c]ourt reviewed a Pre-Sentence Investigation Report [] prior to sentencing[,]" which included

information regarding Appellant's lack of a criminal history, her familial history, and her employment."). A standard guideline-range sentence "is presumptively where a defendant should be sentenced." ***Commonwealth v. Ventura***, 975 A.2d 1128, 1135 (Pa. Super. 2009) (citation omitted).

As the trial court explained in its opinion, "[t]he sentence issued in this case was tailored to [] Appellant and her individual circumstances and crime." Trial Court Opinion, 6/19/25, at 7. Thus, even if Appellant had preserved this issue, we would discern no abuse of the trial court's discretion in sentencing Appellant. Accordingly, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 11/5/2025