J-S02011-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| ALIYAH RICHARDSON, ADMINISTRATRIX OF THE ESTATE OF ALGIE RICHARDSON, DECEASED | : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : : | |
| VALERIE PARKS AND NAVY FEDERAL CREDIT UNION | : : : : | No. 414 EDA 2025 |
| APPEAL OF: VALERIE PARKS | : : | |

Appeal from the Judgment Entered June 10, 2025
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  230303094

BEFORE:  NICHOLS, J., MURRAY, J., and BENDER, P.J.E.

MEMORANDUM BY NICHOLS, J.:                    **FILED MAY 12, 2026**

Appellant Valerie Parks appeals from an order denying her a new trial. Appellant challenges the trial court's award of punitive damages to Appellee Aliyah Richardson, Administratrix of the Estate of Algie Richardson, arguing that the punitive damages were not reasonably related to the amount of compensatory damages awarded, and that the damages award was against the weight of the evidence and was the product of the trial court's ill will, prejudice, and bias against Appellant's attorney.  We affirm.

The trial court summarized the underlying facts of this matter as follows:

On July 19, 2022, [] Decedent, Algie Richardson, died from a heart attack.  The administratrix of []Decedent's estate is his daughter, [Appellee].  [Appellee] filed a complaint on March 28, 2023 against  [],  [Appellant]  and  Navy  Federal  Credit  Union.

[Appellee's] complaint alleged [Appellant] . . . committed illegal conversion by withdrawing $50,303.25 from [] Decedent's bank account.[1] Also, [Appellee] claimed [] Navy Federal Credit Union[] breached its duty of care to [] Decedent by refusing to help restore the funds.  On July 16, 2022, [Appellant] wrote a check for the sum of $50,000.00 and forged [] Decedent's signature on the check.  Then, on July 20, 2022, [Appellant] illegally converted $303.25 from [] Decedent's account through an ATM machine. [Appellee] notified [] Navy Federal Credit Union[] of the forgery, however, it had not taken any meaningful action to restore the funds to [] Decedent's account.  On April 20, 2023, [Appellee] amended her complaint, [], Navy Federal Credit Union[] filed an answer to the amended complaint on May 10, 2023 asserting the check was not forged, and it had no duty to restore the funds.

On July 12, 2023, judgment was entered against [Appellant] for failure to answer the complaint.  [Appellant] filed a [counseled] petition to open default judgment on August 3, 2024 asserting when default judgment was entered against her, she was not represented by counsel, she did not understand how to defend herself in a civil lawsuit, and she has a meritorious defense.  On August 6, 2024, [Appellee] responded to [Appellant's] petition arguing she has not presented a valid excuse to why she waited over one year to participate in this matter.  The Honorable Gwendolyn Bright denied [Appellant's] Petition on September 9, 2024.

Trial Ct. Op., 6/26/25, at 1-2 (formatting altered, citations omitted).

_____

[1] On April 20, 2023, Appellee filed an amended complaint asking the court for compensatory and punitive damages.  **See** Am. Compl. ¶ 12 ("The conduct and actions of [Appellant] as set forth above constitutes an illegal conversion of the decedent's assets, for which [Appellee] seeks compensatory damages in the sum taken by said [Appellant] in violation of 13 Pa. C.S. Sections 3402, 3406 and 3420."); **see also** Am. Compl. ¶ 13 ("The actions and conduct of [Appellant] as set forth above were done by her with criminal intent and plaintiff therefore seeks punitive damages for the illegal acts perpetrated by said [Appellant] in a sum in excess of the statutory jurisdictional limit for arbitration.").  Additionally, we note that Appellee requested punitive damages greater than $50,000 which is the statutory limit for compulsory arbitration. **See** 42 Pa.C.S. § 7361(b).

Appellant did not appeal the petition to open default judgment.
Thereafter, the trial court explained:

The Assessment of Damages trial occurred on October 16, 2024 before the Honorable Vincent L. Johnson.

* * *. [Appellee] . . . was present at trial with her attorney. [Appellant] was not present; however, her attorney presented on her behalf. During trial, [Appellee] alleged [that Appellant] forged a check for $50,000.00, made an ATM withdrawal of $303.25, and charged $1,191.60 from [] Decedent's accounts. [] Decedent died from a heart attack on July 19, 2022. [Appellant] made these withdrawals three days before and five days after [] Decedent's death. [Appellee] requested the court to order [Appellant] to return the illegally converted money with interest to [] Decedent's estate and award punitive damages for [Appellant]'s forgery of [] Decedent's signature and the conversion of his money. Furthermore, [Appellee] informed the court that she filed a police report against [Appellant]. [Appellee] stated "They presented [the police report] to the judge, and the judge said that it was a civil matter, that it was nothing they could do." This prompted the court to inquire about [Appellant]. Specifically, the court asked [Appellee] what the relationship was between [] Decedent and [Appellant]. Before [Appellee] could respond, [Appellant]'s counsel answered the court by stating [Appellant] was [] Decedent's girlfriend. The court corrected [Appellant]'s counsel's interruption by informing him the question was not directed at him. [Appellant]'s counsel apologized to the court, and [Appellee] responded that [Appellant] is a friend of [] Decedent's.

After [Appellee]'s response, [Appellee] was shown various documents to identify Decedent's signature. [Appellee] is familiar with [] Decedent's signature because, as [] Decedent's daughter, she has seen it many times throughout her life. [Appellee] confirmed the signature on the check written to [Appellant] is not [] Decedent's signature. Five days after [] Decedent's death, [Appellee] received a fraud alert on [] Decedent's phone that charges were made on [] Decedent's Best Buy card. [Appellee] believed [Appellant] charged the card because the location of the store that received the charges is a store [] Decedent and [Appellant] frequented. The day after [] Decedent died, [Appellee] learned that money was withdrawn from [] Decedent's account through an ATM. [Appellee] believed [Appellant]

- 3 -

withdrew the money from the ATM because the location of the withdrawal was around the corner from [Appellant's] residence. [Appellee] stated [] Decedent and [Appellant] were the only people who had access to [] Decedent's bank accounts. [Appellant's] counsel objected to [Appellee]'s answer for speculation. The court responded to the objection by stating [Appellee] will testify about the relationship between [] Decedent and [Appellant] because [Appellant's] counsel told the court they were in a relationship. [Appellant's] counsel replied to the court "You're welcome" and the court responded, "you're welcome back". [Appellee] testified [Appellant] and [] Decedent were in a relationship for about seven years and they lived together. During closing arguments, [Appellee] asked the court to award punitive and compensatory damages with interest at eight percent. [Appellant's] counsel argued the court should apply the market rate interest and [that Appellant's] actions were not malicious enough to warrant punitive damages because she did not exhaust [] Decedent's accounts and this was a one-time offense.

The court entered its decision on the bench. The court found [Appellee]'s testimony to be credible. The court found [Appellant] illegally converted $50,000.00 from [] Decedent's account, $1,191.60 from [] Decedent's Best Buy Visa card, and $303.25 from [] Decedent's account through an ATM. Thus, the court awarded $51,494.85 in compensatory damages. The court awarded interest with a rate of six percent for twenty-six months, which equaled $6,871.97. Lastly, the court awarded [Appellee] punitive damages in the amount of $50,000.00. Thus, the court awarded [Appellee] a total of $108,366.82 in damages.

*Id*. at 2-5 (formatting altered and citations omitted).

On October 28, 2024, Appellant filed a post-trial motion in which she argued that the trial court "abused its discretion by awarding punitive damages that have no reasonable relationship to the compensatory damages award, [Appellant] cannot pay the compensatory award because she is indigent, and the court has bias against [Appellant's] counsel." *See* Trial Ct.

Op., at 2. On January 14, 2025, the court denied Appellant's post-trial motion.

*See id.*

Appellant filed a timely notice of appeal and both Appellant and the trial court complied with Pa.R.A.P. 1925.

On appeal, Appellant presents the following issues:

1. Whether the trial court abused its discretion in awarding Appellee[] punitive damages of $50,000.00 dollars which was the rough equivalent of the [c]ourt's award of $54,494.85 in compensatory damages, warranting the grant of a new trial, where the amount of punitive damages assessed by the Court does not bear a reasonable relationship to the award of compensatory damages and Appellant is indigent?[2]

2. Whether the trial court's verdict awarding Appellee $50,000.00 dollars in punitive damages was against the weight of the evidence, where the award of punitive damages bears no reasonable relationship to the loss suffered by the Appellee, and it was clearly the product of the trial court's patent and egregious ill will, prejudice and bias against Appellant's attorney?

3. Whether Appellant's application for remand to incorporate the lower court's default judgment ruling in the within appeal should have bee[n] granted, where the lower court did not permit a hearing on the issue and notwithstanding a 13 month delay in filing the petition, the petition argued a reasonable excuse for Appellant's failure to file a responsive pleading and meritorious defense, which warrants an

_____

[2] We note that the record reflects that the trial court awarded Appellee $51,494.85 in compensatory damages, rather than $54,494.85, which is the amount listed in Appellant's statement of questions. *See* Trial Ct. Op. at 4-5.

> equitable determination that the default judgment should be vacated.[3]

Appellant's Brief at 4-5 (some formatting altered).

In support of her first claim, Appellant argues that the trial court abused its discretion in awarding Appellee punitive damages that did not bear a reasonable relationship to the award of compensatory damages. *See id.* at 12. Additionally, Appellant contends that she is indigent and unable to pay the compensatory damages, much less the amount of punitive damages imposed. *Id.*

Appellant admits that the "single forged check and an unauthorized ATM withdrawal" were "a civil wrong for which the [Appellee] deserved to be made whole." *See id.* at 11. However, she maintains that the $50,000 award for punitive damages was unreasonable, as it was equal to the compensatory damages imposed in this case. *See id.* Further, Appellant contends that the punitive damages bore "no reasonable relationship to the harm suffered by [Appellee], where [Decedent]'s bank account still contained more than $150,000.00 dollars after [Appellant]'s wrongful utterance of the forged check." *See id.* at 11-12.

_____

[3] We note that because Appellant failed to appeal Judge Bright's order denying her petition to open default judgment, Appellant is collaterally estopped from raising it on appeal and it is waived. Further, waiver is applicable to Appellant's default judgement challenge because she failed to preserve the claim to vacate the trial court's default judgment ruling in her 1925(b) statement. *See* Pa.R.A.P. 1925(b)(4)(vii); *see also Dietrich v. Dietrich*, 923 A.2d 461, 463 (Pa. Super. 2007) (stating that issues not raised in the Rule 1925(b) statement are waived on appeal). Therefore, we do not address this issue on appeal.

"In reviewing challenges to punitive damage awards, we determine whether the trial court has committed any abuse of discretion or whether[,] after a complete and exhaustive review of the record, the award shocks the court's sense of justice." *Lomas v. Kravitz*, 130 A.3d 107, 128 (Pa. Super. 2015) (citing *Empire Trucking Co. v. Reading Anthracite Coal Co.*, 71 A.3d 923, 938 (Pa. Super. 2013)).

Additionally, this Court has explained:

> The determination of whether a person's actions rise to the level of outrageous conduct is within the sound discretion of the fact-finder and will not be disturbed by an appellate court so long as that discretion has not been abused. In assessing punitive damages, the trier of fact can properly consider the character of the defendant's act, the nature and extent of the harm to the plaintiff that the defendant caused or intended to cause, and the wealth of the defendant. However, the wealth of the defendant is a proper consideration in the jury's determination of the amount of punitive damages to award, not in the jury's determination of whether or not to impose punitive damages in the first place. Further, it should be presumed a plaintiff has been made whole for his injuries by compensatory damages, so punitive damages should only be awarded if the defendant's culpability, after having paid compensatory damages, is so reprehensible as to warrant the imposition of further sanctions to achieve punishment or deterrence.

*Bayles v. Hamrock*, 463 WDA 2022, 2023 WL 6878620, at *15 (Pa. Super. filed Oct. 18, 2023) (unpublished mem.) (citations omitted and some formatting altered).[4]

---

[4] *See* Pa.R.A.P. 126(b) (stating this Court may rely on unpublished decisions of this Court filed after May 1, 2019, for their persuasive value).

With respect to punitive damages, our Supreme Court has explained that:

> Their purpose in Pennsylvania, consistent with the norm, is to punish the wrongdoers and to deter future conduct. Pennsylvania continues to follow the common law approach except in the medical malpractice arena. Thus, in this Commonwealth, a factfinder in a civil action for damages arising out of a non-medical tort claim enjoys discretion in the fixing of punitive damages. The factfinder may impose punitive damages for torts that are committed willfully, maliciously, or so carelessly as to indicate wanton disregard of the rights of the party injured. Punitive damages are not awarded as additional compensation but are purely penal in nature.

*See Bert Co. v. Turk*, 298 A.3d 44, 61 (Pa. 2023) (citations omitted and some formatting altered). Further, although "[t]here is no bright line ratio that a punitive damages award cannot exceed . . . a punitive damages award that exceeds a single-digit ratio to a 'significant degree' may trigger judicial suspicion, [but] not a presumption of unconstitutionality." *See id.* at 62, 82 (footnote omitted).

Here, the trial court explained:

> [T]he punitive damages award was based on the evidence presented at the hearing. [Appellee] credibly testified that [Appellant] forged a check from [] Decedent's account about three days prior to his death for the total amount of $50,000.00. N.T. 10/16/2024 at 13-14, 26. The day after [] Decedent died, [Appellant] used [] Decedent's account to withdraw $303.25 from an ATM near her home. *Id.* at 17-18. Lastly, five days after [] Decedent's death, [Appellant] charged $1,191.60 to [] Decedent's Best Buy Visa card. *Id.* at 14-16. [Appellant's] counsel stated, "the damages speak for themselves" and did not present any evidence to contest [Appellee]'s evidence. *Id.* at 25. However, [Appellant's] counsel claimed that [Appellant's] conduct did not warrant punitive damages because the withdrawal of the check

was a "one-time thing", and she did not exhaust [] Decedent's entire account. *Id.* at 25. The court disagrees with this representation of the facts because [Appellant] illegally converted [] Decedent's money three days prior to and five days after [] Decedent's death. *See id.* at 26-27. After reviewing all the evidence and testimony, the court found [Appellant's] conduct warranted punitive damages. [Appellee] exhausted all her options to retrieve the money [Appellant] obtained through forgery by notifying [] Navy Federal Credit Union of the activities, filing a police report against [Appellant], and filing a civil complaint. *Id.* at 7[; Appellee]'s Complaint para. 10. [Appellant's] counsel did not provide any rebuttable evidence, just argument against the imposition of punitive damages. Thus, the weight of the evidence shows the court did not abuse its discretion by awarding punitive damages to [Appellee].

Trial Ct. Op. at 6-7 (formatting altered).

Concerning the relationship between punitive and compensatory damages, the trial court stated:

[T]he court did not abuse its discretion by awarding $50,000.00 in punitive damages because the ratio of the damages is below the generally accepted single-digit ratio. The ratio of the punitive damages awarded in this matter is within the generally accepted ratio. Additionally, the punitive damages reasonably relate to the loss [Appellee] suffered because the punitive damages award is the same amount as the forged check [Appellant] cashed. *See* N.T. 10/16/2024 at 13, 26. Thus, the punitive damages award does reasonably relate to the compensatory damages award and the loss [Appellee] suffered due to [Appellant's] actions.

*Id.* at 7-8.

Following our review of the record, we discern no abuse of discretion by the trial court. *See Lomas*, 130 A.3d at 128. The record reflects that the ratio of punitive damages to compensatory damages is less than a one-to-one ratio, which is below the amount that would trigger suspicion of the punitive

damages as discussed by our Supreme Court. *See Bert Co.*, 298 A.3d at 61. Additionally, we agree with the trial court's reasoning that "the punitive damages reasonably relate to the loss [Appellee] suffered because the punitive damages award is the same amount as the forged check Appellant [] cashed." *See* Trial Ct. Op. at 8. To the extent Appellant claims that the award was excessive and that she does not have any liability insurance to cover the punitive damages award, it is well settled that "evidence of wealth is not mandatory to establish a claim for punitive damages." *See Reading Radio, Inc. v. Fink*, 833 A.2d 199, 216 (Pa. Super. 2003) (stating that "the jury could have based its award of punitive damages entirely on its assessment of [the appellants'] conduct"). For these reasons, we find no basis to disturb the trial court's award of punitive damages.

In her remaining issue, Appellant claims that the punitive damages award was against the weight of the evidence because it had "no reasonable relationship to the loss suffered by the Appellee" and "it was clearly the product of the trial court's patent and egregious ill will, prejudice and bias against Appellant's attorney." *See* Appellant's Brief at 14-15. Specifically, Appellant argues that the trial court judge was "acrimonious, disrespectful and wholly contemptuous" towards Appellant's counsel. *See id.* at 13. Appellant lists multiple instances where the trial court judge allegedly demonstrated this behavior. First, Appellant highlights that the trial court judge only provided Appellee's counsel the opportunity to make an opening statement. *See id.* (citation omitted). Second, Appellant claims that the trial court judge shouted

at Appellant's counsel after he answered a question that was posed to Appellee's counsel about the nature of the relationship between the Decedent and Appellant. *See id.* at 14 (citation omitted). After Appellant's counsel clarified that the two were in a relationship, the trial court judge responded, "I didn't ask you." *See id.* (citation omitted). Third, Appellant states that when assessing damages, the trial court judge repeatedly stated that he knew that the Decedent and Appellant "were boyfriend and girlfriend, thanks to [Appellant's counsel,] in a very derisive and hostile tone." *See id.* (citation omitted).

Finally, Appellant contends that, in ruling on an objection, the trial court admonished Appellant's counsel for stating the various grounds for the objection by stating "all you had to say was hearsay." *See id.* Appellant concludes that "[t]he trial court's ill will and prejudice against the undersigned counsel was the driving force of the court's imposition of $50,000.000 in punitive damages, as it equaled the compensatory damages, and, therefore, bore no reasonable relation to the compensatory damages, which [Appellant] could not pay." *See id.*

Our standard of review regarding a weight of the evidence claim is the following:

> This Court has repeatedly emphasized that it is not only a[ trial] court's inherent fundamental and salutary power, but its duty to grant a new trial when it believes the verdict was against the weight of the evidence and resulted in a miscarriage of justice. Although a new trial should not be granted because of a mere conflict in testimony or because the [trial court] on the same facts would have arrived at a different conclusion, a new trial should be

- 11 -

awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail.

See **Armbruster v. Horowitz**, 744 A.2d 285, 287 (Pa. Super. 1999) (citation omitted).

Further, a claim of judicial prejudice or bias may not be raised for the first time in post-trial proceedings. **See Reilly by Reilly v. Southeastern Pa. Transp. Authority**, 489 A.2d 1291, 1299 (Pa. 1985) (stating that "the proper practice on a plea of prejudice is to address an application by petition to the judge before whom the proceedings are being tried" so that the trial judge "may determine the question in the first instance"). As our Supreme Court has explained, "[w]here the asserted impediment is known to the party, and that party fails to promptly direct the attention of the jurist to that fact, the objection is waived and the party may not subsequently offer the objection as a basis for invalidating the judgment." **See Goodheart v. Casey,** 565 A.2d 757, 763 (Pa. 1989) (citations omitted).

With regard to the claim of bias against Appellant's counsel, the trial court explained:

> [Appellant's] counsel claims the court was biased against him because the court made comments towards [Appellant's] counsel. For example, the court asked [Appellee] directly about the relationship between [Appellant] and [] Decedent. [Appellant's counsel] interruption prompted the court to remind him that the question was for [Appellee]. **See** N.T. 10/16/2024 at 8. When the court asked [Appellee] to describe the relationship between [Appellant] and [] Decedent, it stated it asked about the relationship thanks to [Appellant's] counsel. **Id.** at 19. [Appellant's counsel] stated, "you're welcome" to the court and

- 12 -

the court responded. ***Id.*** The comments made by the court do not show any ill will or bias against [Appellant's counsel] because the court's decision is supported by the evidence. As stated above, the evidence in this matter shows [Appellant] illegally converted money from [] Decedent's accounts three days before and five days after his death. ***See Id.*** at 26-27. The sparse remarks the court made to [Appellant's counsel] were not prejudicial and do not prove the court's decision was based on anything besides the evidence. Thus, the court's decision to award punitive damages is not the product of any ill will, prejudice, or bias against [Appellant's counsel].

Trial Ct. Op. at 8-9 (some formatting altered).

Following our review of the record, we discern no abuse of discretion by the trial court. ***See Lomas****,* 130 A.3d at 128; ***Empire Trucking Co.****,* 71 A.3d at 938. The record reflects that the trial court reasonably concluded that the award of punitive damages was "based on the evidence presented at the hearing." ***See*** Trial Ct. Op. at 6. Specifically, the trial court relied upon three instances where Appellee "credibly testified" about Appellant's use of Decedent's financial accounts. ***See id.; see also*** **N.T.,** 10/16/24, at 8, 19. Additionally, when Appellant was given an opportunity to rebut Appellee's evidence, Appellant's counsel did not "present any evidence to contest [Appellee]'s evidence" and instead stated that "the damages speak for themselves." ***See*** Trial Ct. Op. at 7; ***see also*** N.T., 10/16/24, at 24. The trial court also noted that Appellee had "exhausted all her options to retrieve the money" by notifying the bank, filing a police report, and a civil complaint. ***See*** Trial Ct. Op. at 7; ***see also*** N.T., 10/16/24, at 7. Therefore, on this record, we conclude that Appellant is not entitled to relief.

Further, to the extent Appellant claims that the award of punitive damages was the result of the trial court's ill-will or bias against Appellant's counsel, we conclude that Appellant waived this issue by failing to preserve it before the trial court by raising it for the first time during post-trial proceedings. Furthermore, even if the issue was not waived, we agree with the trial court's reasoning that the punitive damages award was not the product of bias. **See Reilly by Reilly**, 489 A.2d at 1299.[5]

For these reasons, we find no basis to disturb the trial court's award of punitive damages. Accordingly, we affirm.

Order affirmed. Jurisdiction relinquished.

_____

[5] Generally, appellants must raise an issue of judicial bias before the trial court judge who is presiding over the trial. **See Ware v. U.S. Fidelity & Guar. Co.**, 577 A.2d 902, 904 (Pa. Super. 1990) (stating a "party may not raise the issue of judicial prejudice or bias for the first time in post trial proceedings."). Similar to the appellant in **Ware**, here Appellant raised the issue of judicial bias for the first time in her post-trial motion. **See** Trial Ct. Op. at 2; **see also** Appellant's Post-Trial Motion at 7. For this reason, we find that Appellant's judicial bias claims are waived.

However, even if Appellant had not waived her claim, we agree with the trial court that the award of punitive damages was not the product of any bias towards Appellant's counsel. **See** Trial Ct. Op. at 13-14. Appellant listed four instances where the trial court allegedly displayed bias, ill-will, and prejudice towards Appellant's counsel. **See id.** However, these remarks do not prove that the award of punitive damages were "based on anything besides the evidence." **See id**; **see also V.P.V. v. S.V.,** 629 WDA 2017, 2017 WL 5054301 at *4 (Pa. Super. filed Nov. 4, 2025) (stating "[J]udicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge" (citation omitted)).

- 14 -

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 5/12/2026